SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Reinaldo Fuentes (A-18-12) (070729)**

**Argued September 9, 2013 -- Decided January 7, 2014**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court reviews a sentencing court's application of the aggravating and mitigating factors in N.J.S.A. 2C:44-1(a) and (b).

On July 1, 2009, police were summoned to a New Brunswick apartment which defendant Reinaldo Fuentes shared with Adrian Bentazos. Officers found Bentazos lying on a bed in a rear bedroom, with his pants open and his genitals exposed. Bentazos had suffered two stab wounds in his abdomen and multiple head contusions. In the apartment, officers found a bloodstained knife, a damaged and bloodstained car stereo amplifier, and a small amount of cocaine. Police traced Bentazos's cellphone to Fuentes, who subsequently confessed to killing Bentazos.

Fuentes was indicted for first-degree murder, third-degree possession of a weapon for an unlawful purpose, fourth-degree unlawful possession of a weapon, and third-degree possession of a controlled dangerous substance. He pled guilty to first-degree aggravated manslaughter. During his plea hearing, Fuentes explained that he was awakened by Bentazos, who grabbed his neck and threatened to rape him. When Fuentes stood to defend himself, Bentazos grabbed a knife. Fuentes repeatedly struck Bentazos with the amplifier, wrested the knife away from him, and stabbed him twice. Fuentes knew Bentazos needed medical attention, but did not seek assistance. He agreed that he acted recklessly and with extreme indifference to human life, admitted that he had acted out of "extreme annoyance," and acknowledged that his actions threatened and caused Bentazos's death.

The trial court sentenced Fuentes to a twenty-year prison term subject to an eighty-five percent parole ineligibility period and a five-year period of parole supervision. Applying the aggravating factors found in N.J.S.A. 2C:44-1(a) and mitigating factors in N.J.S.A. 2C:44-1(b), the court found aggravating factor nine, "[t]he need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9), and assigned it "substantial weight." It found three mitigating factors, including factor eight, "[t]he defendant's conduct was the result of circumstances unlikely to recur," N.J.S.A. 2C:44-1(b)(8), to which it assigned "moderate weight." The court concluded that, although Fuentes's imprisonment would impose a hardship on his family, the multiple mitigating factors were substantially outweighed by the strength of the sole aggravating factor. Nine days later, the court held a second sentencing hearing in order to state its finding with respect to an additional factor, aggravating factor one, "[t]he nature and circumstance of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner," N.J.S.A. 2C:44-1(a)(1), which it had inadvertently omitted from the first hearing. The court accorded moderate to significant weight to the factor, finding that Fuentes used excessive force by stabbing and beating Bentazos beyond the level necessary for self-defense. The court reiterated its earlier findings and did not amend the sentence.

Fuentes appealed his conviction and sentence, arguing that the trial court impermissibly double-counted an element of the offense of aggravated manslaughter in finding aggravating factor one, relied on facts inconsistent with the basis of Fuentes's guilty plea, gave improper weight to aggravating factor nine, and improperly balanced the aggravating and mitigating factors. The Appellate Division rejected Fuentes's arguments and affirmed his sentence. The Court granted Fuentes's petition for certification. 212 N.J. 431 (2012).

**HELD:** Because the trial court did not adequately explain its findings with respect to the aggravating factors, or its balancing of the aggravating and mitigating factors pursuant to N.J.S.A. 2C:44-1(a) and (b), the matter is remanded for resentencing.

1. Sentencing determinations are accorded deference, and a reviewing court must not substitute its judgment for that of the trial court. When determining the appropriate sentence within the applicable statutory range, the trial court must identify whether any of N.J.S.A. 2C:44-1(a)'s aggravating factors or N.J.S.A. 2C:44-1(b)'s mitigating factors apply. Each factor found by the court must be supported by competent, reasonably credible evidence, and the court must balance the aggravating and mitigating factors. The balancing process is case-specific, requiring the court to qualitatively assess and assign the appropriate weight to each factor. The court must provide a clear and detailed statement of reasons for imposing a particular sentence, including the factual basis supporting its findings with respect to the aggravating and mitigating factors. This is necessary for effective appellate review. (pp. 13-18)

2. Aggravating factor one requires that the court consider "[t]he nature and circumstance of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner." N.J.S.A. 2C:44-1(a)(1). The trial court must review the severity of the crime and assess the degree to which the safety of others was threatened. In doing so, the court must take care to avoid double-counting facts that establish elements of the relevant offense. In order to convict a defendant of aggravated manslaughter, the State must prove that the victim died due to the defendant's reckless conduct under circumstances manifesting an extreme indifference to human life. Thus, a trial court applying aggravating factor one must provide an analysis sufficient to ensure reviewing courts that its application of the factor was not based on evidence necessary to prove the elements of aggravated manslaughter, such as the victim's death. Additionally, the court's assessment of the nature and circumstances of the offense must fairly reflect the record before it. (pp. 19-23)

3. Here, the trial court did not provide an adequate explanation of its reasons for applying aggravating factor one. It failed to discuss the circumstances of the offense or to identify the supporting facts in the record distinct from those necessary to prove elements of the offense. Since application of the factor was not supported by competent and credible evidence, Fuentes must be resentenced. On remand, the court may apply aggravating factor one only if it is supported by credible evidence. The court must provide a detailed explanation of its findings with respect to this and any other factor applied. (p. 24)

4. Aggravating factor nine invokes "[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(9). This requires the trial court to assess the risk of recidivism, as well as evaluate the defendant in light of his or her criminal history. The factor's deterrence component incorporates two related but distinct concepts: the sentence's general deterrent effect on the public and its specific deterrent effect on the defendant. The latter is the primary focus of aggravating factor nine. (pp. 25-26)

5. Here, the question of specific deterrence is complicated by the trial court's finding of mitigating factor eight, which requires the court to conclude that the offense at issue was "the result of circumstances unlikely to recur." N.J.S.A. 2C:44-1(b)(8). Although case law reveals that aggravating factor nine and mitigating factor eight rarely apply in the same sentencing, they are not inherently incompatible. In exceptional cases, even where the record shows that the offense arose under circumstances unlikely to recur, a defendant could nonetheless pose of a risk of recidivism warranting specific deterrence. Similarly, a finding of mitigating factor seven, lack of a criminal record, N.J.S.A. 2C:44-1(b)(7), also does not negate a finding of aggravating factor nine. Here, as with aggravating factor one, the trial court's reasons for applying aggravating factor nine are insufficiently explained. If, on resentencing, the court determines that this factor applies, it must address both general and specific deterrence. If it also finds mitigating factor eight, it must explain how it reconciles those two findings. Finally, the court should explain in greater detail its assessment of the weight assigned to each aggravating and mitigating factor, and its balancing of those factors as they apply to Fuentes. (pp. 26-29)

The judgment of the Appellate Division is **REVERSED**, defendant's sentence is **VACATED**, and the matter is **REMANDED** to the trial court for resentencing in accordance with the Court's opinion.

**CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and ALBIN, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

REINALDO FUENTES,

    Defendant-Appellant.

> Argued September 9, 2013 – Decided January 7, 2014
>
> On certification to the Superior Court, Appellate Division.
>
> Rochelle M.A. Watson, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney).
>
> Joie D. Piderit, Acting Assistant Prosecutor Special Deputy Attorney General argued the cause for respondent (Andrew C. Carey, Acting Middlesex County Prosecutor, attorney; Ms. Piderit and Brian D. Gillet, Assistant Prosecutor, on the briefs).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, the Court reviews a sentencing judge's application of the aggravating and mitigating factors prescribed in N.J.S.A. 2C:44-1(a) and (b). Defendant Reinaldo Fuentes admitted to killing his roommate, Adrian Bentazos, in an altercation that he claimed was precipitated by Bentazos' attempt to sexually assault him while defendant was sleeping.

1

In accordance with his plea agreement with the State, defendant pled guilty to aggravated manslaughter, N.J.S.A. 2C:11-4(c), and the other charges pending against him were dismissed.

Consistent with the plea agreement, defendant was sentenced to a twenty-year term of incarceration. The sentencing court initially found only one statutory aggravating factor, the need to deter defendant and others, N.J.S.A. 2C:44-1(a)(9) (aggravating factor nine). It applied three mitigating factors: the absence of a prior record of delinquency or criminal activity, N.J.S.A. 2C:44-1(b)(7) (mitigating factor seven); that defendant's conduct was a result of circumstances unlikely to recur, N.J.S.A. 2C:44-1(b)(8) (mitigating factor eight); and that the imprisonment of the defendant would entail excessive hardship to himself or his dependents, N.J.S.A. 2C:44-1(b)(11) (mitigating factor eleven). The court found that the single aggravating factor substantially outweighed the mitigating factors. In a supplemental sentencing hearing, the court amended its findings to add a second aggravating factor, the nature and circumstances of the offense and the role of the actor, N.J.S.A. 2C:44-1(a)(1) (aggravating factor one), but did not alter defendant's sentence. The Appellate Division affirmed.

We reverse, vacate defendant's sentence, and remand this matter for resentencing. We hold that the sentencing court did

2

not adequately explain its findings with respect to aggravating factors one and nine, or its balancing of the aggravating and mitigating factors pursuant to N.J.S.A. 2C:44-1(a) and (b). We do not constrain the sentencing court from finding any statutory aggravating or mitigating factor on resentencing. We caution, however, that an application of aggravating factor one must be premised upon factors independent of the elements of the crime and firmly grounded in the record. Further, any determination that aggravating factor nine and mitigating factor eight are applicable to the same case should be specifically explained in the court's statement of reasons. To achieve the Legislature's goal of avoiding sentencing disparity, and to ensure fair and effective appellate review, sentences imposed pursuant to plea agreements must be thoroughly explained on the record at the sentencing hearing.

## I.

At approximately 10:30 a.m. on July 1, 2009, New Brunswick police were dispatched to an apartment that had been shared by defendant, then twenty years old, and Bentazos. They were summoned by Bentazos' friend, who stated that when he arrived at the apartment to help Bentazos move his belongings out of the residence, he found Bentazos in a bedroom, unresponsive. The responding officers found the body of a man later identified as Bentazos lying face up on a bed in a rear bedroom. Although he

3

was fully clothed, his pants were unbuttoned and his zipper was pulled down, exposing his genitals. The officers noted that Bentazos had two stab wounds to his abdomen and multiple head contusions. A search of the apartment revealed a broken and bloodstained knife, a damaged and bloodstained car stereo amplifier and a broken mirror, as well as a small amount of packaged cocaine.

After investigating the scene, the New Brunswick police traced the victim's cellphone, which was not found at the crime scene, to an address later identified as the home of defendant's girlfriend. There, Bentazos' friend spotted defendant and identified him to the officers as the victim's roommate. Police called the victim's cellphone, which rang in defendant's shirt pocket. The officers approached defendant and told him that they needed to speak with him about a homicide investigation. Defendant agreed to speak with the police, was transported to police headquarters and was advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). He subsequently confessed to police that he had killed Bentazos.

The medical examiner's autopsy of Bentazos revealed evidence of blunt and sharp force traumatic injuries to the victim's head, and stab wounds to his neck, back and abdomen. The autopsy determined the cause of death to be homicide.

4

Defendant was indicted for first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2), third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d), and third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1).  The grand jury found as an aggravating factor that defendant committed the offense "in an outrageously or wantonly vile, horrible, or inhuman manner in that it involved torture, depravity of the mind, or an aggravated assault on the victim," N.J.S.A. 2C:11-3(b)(4)(c) (incorrectly cited in the indictment as N.J.S.A. 2C:11-3(a)(4)(c)).

On July 2, 2010, defendant agreed to plead guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a), pursuant to a plea agreement negotiated by his counsel and the State.  In accordance with the plea agreement, the State agreed to dismiss all other charges and to recommend a twenty-three year sentence. Despite his stated intention to plead guilty, defendant did not provide an adequate factual basis for his plea at his initial plea hearing on July 2, 2010.  There, defendant admitted to inflicting the injuries that caused Bentazos' death in a fight on July 1, 2009, and to striking Bentazos with an amplifier after Bentazos threatened to kill him with a knife, but did not expressly acknowledge stabbing the victim.  Defendant agreed

that his conduct was reckless and that it demonstrated an extreme indifference to the value of human life, but he suggested that he had not exceeded the reasonable bounds of self-defense and did not consider himself guilty. Defense counsel acknowledged that defendant failed to provide an adequate factual basis for his guilty plea, and the court did not accept the plea during the first plea hearing.

On July 27, 2010, the trial court held a second plea hearing. This time, defendant provided a factual basis for his guilty plea that satisfied the court. He stated that in the early morning of July 1, 2009, he was awakened by Bentazos, whose pants were pulled down. According to defendant, Bentazos grabbed defendant's neck and threatened to rape him. Defendant told the court that when he stood up to defend himself, Bentazos grabbed a knife, so defendant struck Bentazos repeatedly and excessively with an amplifier, wrested the knife away from Bentazos and used it to stab him twice. Defendant admitted that he was aware that Bentazos was clearly in need of medical attention, but that he did not call police or an ambulance. Responding to his counsel's questions, defendant agreed that he had acted recklessly and with extreme indifference to human life, that he had not acted in self-defense but "out of extreme annoyance," and that his actions both threatened and caused the victim's death. After acknowledging his understanding of the

plea form, his sentencing exposure and the immigration consequences of his plea, defendant pled guilty to aggravated manslaughter.

Following his plea, defendant gave a presentence interview in the presence of his counsel. During the interview, which was summarized in the presentence report that was part of the sentencing record, defendant substantially repeated the account of his offense that he had provided to the court at his second plea hearing. He placed greater emphasis, however, on the conduct by the victim that, by defendant's account, prompted the attack. Defendant stated that he was sleeping when Bentazos, whom he had considered to be "like a brother," woke him up and grabbed him by the throat. He said that Bentazos' pants were unzipped and lowered to the knees, and that Bentazos attempted to sexually assault him. According to defendant, he resisted Bentazos' advances, and then Bentazos grabbed a knife and threatened to kill him. Defendant said that he took the car stereo amplifier and hit Bentazos several times with it. He said that he then took the knife from Bentazos, who was dazed and bloody, and stabbed him twice in the abdomen, at which point Bentazos fell onto the bed.

On October 12, 2010, the trial court sentenced defendant to twenty years' imprisonment subject to the eighty-five percent parole ineligibility period prescribed by the No Early Release

7

Act (NERA), N.J.S.A. 2C:43-7.2, with a five-year period of parole supervision as well as statutory fines and penalties. The court noted the statutory sentencing range of ten to thirty years for the first-degree offense of aggravated manslaughter. It acknowledged that defendant had no juvenile adjudications, prior arrests or adult criminal history, and that he had a one-year-old daughter. The sentencing court commented, however, on the defendant's admission that he had both struck the victim with an amplifier and stabbed him several times.

Applying the statutory factors set forth in N.J.S.A. 2C:44-1(a) and (b), the trial court found a single aggravating factor, aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), and assigned it "substantial weight." The court identified three mitigating factors. It accorded "substantial weight" to mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), and "moderate weight" to mitigating factor eight, N.J.S.A. 2C:44-1(b)(8). Finally, the trial court found mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11), but did not identify the weight given to that factor. It did, however, acknowledge defendant's status as the father of a young child, and the consequent hardship to defendant's family. The trial court determined that although the mitigating factors outnumbered the single aggravating factor, they were substantially outweighed by the strength of the aggravating factor. Noting the presumption of reasonableness afforded to a

8

negotiated plea, the trial court found the sentence to be within the statutory range and consistent with the law and the interests of justice.

Nine days later, the trial court held a second sentencing hearing to state its finding with respect to an additional factor, aggravating factor one, N.J.S.A. 2C:44-1(a)(1), which it had intended to address in the first hearing, but had inadvertently omitted. The court noted that the nature of the offense should not be used to support an application of aggravating factor one, but that defendant's role and the nature of his attack could be considered in the sentencing. The court accorded moderate to significant weight to aggravating factor one. It found that defendant had repeatedly stabbed the victim and had continued to beat the victim "well beyond any self-defense suggested." The court characterized the defendant as using excessive force. It then reiterated its findings as to aggravating factor nine and mitigating factors seven, eight and eleven, and did not amend defendant's twenty-year sentence.

Defendant appealed his sentence. He argued that the trial court's finding as to aggravating factor one entailed impermissible "double-counting" of an element of the offense of aggravated manslaughter, that the court's recitation of the details of the attack was inconsistent with the factual basis of defendant's guilty plea, that the trial court gave improper

9

weight to aggravating factor nine, and that the court had improperly balanced the aggravating and mitigating factors of N.J.S.A. 2C:44-1(a) and (b). The State countered that the court's findings with respect to aggravating factors one and nine were fully supported by the record, and that the finding as to aggravating factor one did not involve impermissible double-counting of the elements of aggravated manslaughter. The Appellate Division rejected defendant's arguments, and affirmed his sentence by an order dated April 17, 2012.

We granted defendant's petition for certification. State v. Fuentes, 212 N.J. 431 (2012).

### III.

Defendant argues that the trial court should not have applied aggravating factor one, that it improperly weighed aggravating factor nine and that it improperly balanced the aggravating and mitigating factors. He contends that aggravating factor one, N.J.S.A. 2C:44-1(a)(1), should not apply to his case because his offense, prompted by an attempted sexual assault, was not among the most serious offenses in its class. He also claims that aggravating factor one could not apply because a jury could have convicted him of passion provocation manslaughter, N.J.S.A. 2C:11-4(b)(2), had the case been tried. Defendant disputes the trial court's conclusion that, because he repeatedly struck and stabbed the victim instead of using only

10

the measure of force necessary to defend himself, aggravating factor one was implicated in this case. Defendant also asserts that the trial court predicated its finding of aggravating factor one, in part, on the fact that the victim died, notwithstanding the fact that the death of the victim is an element of aggravated manslaughter.

Defendant contends that the trial court found two statutory factors that are incompatible: aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), which may only be given substantial weight if there is a need for specific deterrence of defendant himself, and mitigating factor eight, requiring a finding that defendant's conduct was "the result of circumstances unlikely to recur," N.J.S.A. 2C:44-1(b)(8). Defendant further argues that, in light of his lack of a criminal record, the court's application of mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), contravenes its conclusion that there is a need for deterrence in this case. Finally, defendant contests the trial court's balancing of the N.J.S.A. 2C:44-1(a) and (b) factors, given the number of aggravating and mitigating factors found by the court and the weight accorded to each factor.

The State argues that the trial court properly considered each of the statutory factors, and that it appropriately balanced them in accordance with 2C:44-1(a) and (b). It characterizes the trial court's application of aggravating

11

factor one as consistent with the grand jury's finding of an aggravating factor under N.J.S.A. 2C:11-3(b)(4)(c) when it indicted defendant. The State cites crime scene photographs, which do not appear to have been part of the record before the sentencing court, as well as other evidence, to show that defendant's offense was particularly brutal. It dismisses the significance of defendant's self-defense justification as a factor in sentencing, arguing that defendant received the benefit of that justification when the charge was amended from first-degree murder to aggravated manslaughter by virtue of the plea agreement, and that defendant admitted to recklessly causing the victim's death under circumstances "manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a)(1). The State counters defendant's assertion that the death of the victim, an element of defendant's offense, was improperly double-counted in the court's application of aggravating factor one. It argues that the cruel nature of defendant's attack, not its fatal result, prompted the sentencing court's finding with respect to this factor.

The State further argues that the sentencing court's finding as to aggravating factor nine was properly premised on a need for specific, as well as general, deterrence. It contends that defendant needs to be specifically deterred from reacting violently to an unwanted sexual advance. The State argues that

12

the need for public safety and deterrence increases proportionately with the seriousness of the offense, and accordingly the first-degree offense of aggravated manslaughter requires substantial deterrence. It argues that the court's balancing of the aggravating and mitigating factors, which generated a sentence in the middle of the statutory range for this first-degree crime, was proper.

IV.

Appellate courts review sentencing determinations in accordance with a deferential standard. The reviewing court must not substitute its judgment for that of the sentencing court. State v. O'Donnell, 117 N.J. 210, 215 (1989). The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364-65 (1984). When the trial court fails to provide a qualitative analysis of the relevant sentencing factors on the record, an appellate court may remand for resentencing. State v. Kruse, 105 N.J. 354, 363 (1987). An appellate court may also remand for resentencing if the trial court considers an aggravating factor that is

13

inappropriate to a particular defendant or to the offense at issue.  State v. Pineda, 119 N.J. 621, 628 (1990).

A sentence imposed pursuant to a plea agreement is presumed to be reasonable because a defendant voluntarily "[waived] . . . his right to a trial in return for the reduction or dismissal of certain charges, recommendations as to sentence and the like." State v. Davis, 175 N.J. Super. 130, 140 (App. Div. 1980); see also State v. Spinks, 66 N.J. 568, 573 (1975) (stating that "an appellate court should ordinarily defer to the presumed reasonableness of a bargained sentence").  Even a sentence recommended as part of a plea agreement, however, may be vacated if it does not comport with the sentencing provisions of our Code of Criminal Justice.  See State v. Sainz, 107 N.J. 283, 292 (1987) (noting that sentencing standards "apply as well to sentences that result from guilty pleas, including those guilty pleas that are entered as part of a plea agreement").

In devising the sentencing scheme set forth in the Code, the Legislature's "'dominant, if not paramount, goal . . . [was] uniformity in sentencing.'"  State v. Natale, 184 N.J. 458, 485 (2005) (quoting State v. Kromphold, 162 N.J. 345, 352 (2000)).  To minimize sentencing disparity, the drafters of our Code replaced "the unfettered sentencing discretion of prior law with a structured discretion designed to foster less arbitrary and more equal sentences."  Ibid. (quoting Roth, supra, 95 N.J. at

345) (internal quotations omitted). The framers of the Code sought to "establish uniformity by both structuring and standardizing the sentencing courts' discretion." State v. Jarbath, 114 N.J. 394, 400 (1989).

To that end, the Code, our case law and the court rules prescribe a careful and deliberate analysis before a sentence is imposed. The foundation of that analysis is a thorough understanding of the defendant and the offense. Although a court sentencing a defendant based upon a guilty plea must be careful not to impose a sentence for an offense beyond the scope of the plea, it is not limited only to the factual admissions that comprise the basis for the plea. Sainz, supra, 107 N.J. at 293. Instead, "[a]t sentencing there should be presented 'the fullest information possible concerning the defendant's life and characteristics.'" State v. Marzolf, 79 N.J. 167, 176 (1979) (quoting Williams v. New York, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083, 93 L. Ed. 1337, 1342 (1949)); accord Natale, supra, 184 N.J. at 472. The court evaluates "a range of information unconstrained by evidential considerations." State v. Randolph, 210 N.J. 330, 348 (2012) (citing Natale, supra, 184 N.J. at 486). Thus, the sentencing court gathers information necessary to assess the defendant's history and characteristics, and to understand the nature and circumstances of his or her crime.

To minimize disparity, a sentencing court exercises its discretion in the structured setting prescribed by the Code. Our statutes provide a "'general framework to guide judicial discretion in imposing sentences' to ensure that similarly situated defendants [do] not receive dissimilar sentences." Natale, supra, 184 N.J. at 485 (quoting State v. Hodge, 95 N.J. 369, 375 (1984)). When an ordinary term of incarceration is warranted, N.J.S.A. 2C:43-6(a) prescribes statutory ranges for that term based upon the degree of the offense: ten to twenty years for a first-degree crime, five to ten years for a second-degree crime, three to five years for a third-degree crime, and up to eighteen months for a fourth-degree crime. N.J.S.A. 2C:43-6(a)(1)-(4).

As it determines a defendant's term of incarceration within the statutory range for each degree of offense, the sentencing court must first identify whether any of N.J.S.A. 2C:44-1(a)'s thirteen aggravating factors and N.J.S.A. 2C:44-1(b)'s thirteen mitigating factors apply. Each factor found by the trial court to be relevant must be supported by "competent, reasonably credible evidence." Roth, supra, 95 N.J. at 363. The court must then balance the relevant aggravating factors and mitigating factors. The sentencing court does more than quantitatively compare the number of pertinent aggravating factors with the number of applicable mitigating factors; the

16

relevant factors are qualitatively assessed and assigned appropriate weight in a case-specific balancing process. Kruse, supra, 105 N.J. at 363; State v. Denmon, 347 N.J. Super. 457, 467-68 (App. Div.), certif. denied, 174 N.J. 41 (2002).

Having balanced the relevant factors, the sentencing court does not set the term of incarceration in accordance with an "inflexible rule." Natale, supra, 184 N.J. at 488. Instead, one "reasonable" approach for sentencing judges is to use "the middle of the sentencing range as a logical starting point for the balancing process." Ibid. So, for example, "if the aggravating and mitigating factors are in equipoise, the midpoint will be an appropriate sentence." Ibid. Moreover, "reason suggests that when the mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range." Ibid.

At the time of sentencing, the court must "state reasons for imposing such sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence." R. 3:21-4(g); see also N.J.S.A. 2C:43-2(e) (requiring sentencing court to provide statement on record of "factual basis supporting its findings of particular aggravating or mitigating factors affecting sentence"). A clear explanation "of the balancing of aggravating and mitigating

17

factors with regard to imposition of sentences and periods of parole ineligibility is particularly important." State v. Pillot, 115 N.J. 558, 565-66 (1989) (citing State v. Baylass, 114 N.J. 169, 173-74 (1989); Kruse, supra, 105 N.J. at 359-60). That explanation should thoroughly address the factors at issue. As this Court has noted, "[a]lthough our case law does not require that trial courts explicitly reject every mitigating factor argued to the court," such a practice is encouraged, as it "not only ensures consideration of every factor but also demonstrates to defendants and the public that all arguments have been evaluated fairly." State v. Bieniek, 200 N.J. 601, 609 (2010).

A careful statement of reasons also facilitates appellate review. The trial court's explanation of its reasoning "is important for meaningful appellate review of any criminal sentence challenged for excessiveness," because the appellate court "is expected to assess the aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'" Id. at 608 (quoting Roth, supra, 95 N.J. at 364). A clear and detailed statement of reasons is thus a crucial component of the process conducted by the sentencing court, and a prerequisite to effective appellate review.

V.

18

This appeal centers upon the trial court's application of two of the statutory factors, aggravating factor one, N.J.S.A. 2C:44-1(a)(1), and aggravating factor nine, N.J.S.A. 2C:44-1(a)(9). We consider each in turn.

Aggravating factor one requires the trial court to consider "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner." N.J.S.A. 2C:44-1(a)(1). When applying this factor, "the sentencing court reviews the severity of the defendant's crime, 'the single most important factor in the sentencing process,' assessing the degree to which defendant's conduct has threatened the safety of its direct victims and the public." State v. Lawless, 214 N.J. 594, 609 (2013) (quoting Hodge, supra, 95 N.J. at 379). As the Court has held, "[t]he paramount reason we focus on the severity of the crime is to assure the protection of the public and the deterrence of others. The higher the degree of the crime, the greater the public need for protection and the more need for deterrence." State v. Megargel, 143 N.J. 484, 500 (1996).

When it assesses whether a defendant's conduct was especially "heinous, cruel, or depraved," a sentencing court must scrupulously avoid "double-counting" facts that establish the elements of the relevant offense. See State v. Yarbough,

19

100 N.J. 627, 645 (1985); Kromphold, supra, 162 N.J. at 353. As this Court observed:

> [In Yarbough], we recognized that facts that established elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence. We reasoned that the Legislature had already considered the elements of an offense in the gradation of a crime. If we held otherwise, every offense arguably would implicate aggravating factors merely by its commission, thereby eroding the basis for the gradation of offenses and the distinction between elements and aggravating circumstances. In the same manner, double-counting of elements of the offenses as aggravating factors would be likely to interfere with the Code's dedication to uniformity in sentencing.
>
> [Kromphold, supra, 162 N.J. at 353 (internal citation omitted).]

In appropriate cases, a sentencing court may justify the application of aggravating factor one, without double-counting, by reference to the extraordinary brutality involved in an offense. See O'Donnell, supra, 117 N.J. at 217. In O'Donnell, supra, the Court held that "cruel" conduct may give rise to an aggravating factor in a manslaughter sentencing when the defendant intended "'to inflict pain, harm and suffering – in addition to intending death.'" Id. at 217-18 (quoting State v. Ramseur, 106 N.J. 123, 208 (1987)); see also State v. Soto, 340 N.J. Super. 47, 54-55, 71-72 (App. Div.), certif. denied, 170 N.J. 209 (2001) (affirming application of aggravating factor one

20

when trial court noted protracted suffering inflicted and brutal killing of victim); State v. Mara, 253 N.J. Super. 204, 214 (App. Div. 1992) (affirming sentencing court's finding that aggravating factor one applied when, in aggravated assault case, "the serious injuries were far in excess of that required to satisfy" statutory elements).  A sentencing court may consider "aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior." State v. Henry, 418 N.J. Super. 481, 493 (Law Div. 2010) (citing State v. Taylor, 226 N.J. Super. 441, 453 (App. Div. 1988)).

In the present aggravated manslaughter case, the State was required to prove that "[t]he actor recklessly cause[d] death under circumstances manifesting extreme indifference to human life."  N.J.S.A. 2C:11-4(a)(1).  Thus, the sentencing court's application of aggravating factor one must be based on factors other than the death of the victim and the circumstances essential to support a finding that the defendant has acted with extreme indifference to human life.  Such a finding requires a nuanced analysis of the defendant's offense, clearly explained so that an appellate court may be certain that the sentencing court has refrained from double-counting the elements of the offense.  As the Appellate Division held in State v. Briggs, effective appellate review cannot be achieved when there is uncertainty "whether the court meant that [the defendant's

21

killing of the victim] was unusually brutal or cruel in nature."
349 N.J. Super. 496, 505 (App. Div. 2002).  As the panel noted,
"[i]f the court meant that the aggravating factor was applicable
because a death resulted from defendant's conduct, it erred in
applying the factor, since the death of the victim cannot be
double counted as an aggravating factor in a manslaughter case."
Ibid. (citing Towey, supra, 244 N.J. Super. at 593 ("Both the
victim's death and the recklessness of defendant's conduct were
elements of the offense to which defendant pled guilty and,
thus, should not have been considered as aggravating factors in
imposing the base term.")).

The sentencing court must not only ensure that facts
necessary to establish the elements of the defendant's offense
are not double-counted for purposes of sentencing, but that its
assessment of the "nature and circumstances of the offense"
fairly reflects the record before it.  N.J.S.A. 2C:44-1(a)(1).
In Jarbath, supra, this Court considered the application of
aggravating factor one in the setting of a second-degree
manslaughter case arising from the death of the defendant's
infant son.  114 N.J. at 398.  It concluded that the trial
court's application of aggravating factor one "conflict[ed] with
[its] acceptance of [the defendant's] version that she dropped
the child accidentally," and that the State's proffer of a
different version of the death on appeal did not justify the

22

sentencing court's reliance on this factor. Id. at 404. Any determination that the defendant's conduct was "especially heinous, cruel, [or] depraved" must be fully grounded in the record before the sentencing court. N.J.S.A. 2C:44-1(a)(1).

These principles do not necessarily bar the application of aggravating factor one to this or any other defendant convicted of aggravated manslaughter. In some settings, a court may identify competent, reasonably credible evidence that the defendant's offense was "committed in an especially heinous, cruel, or depraved manner," or that the evidence otherwise justifies application of aggravating factor one, without double-counting the elements of the offense. N.J.S.A. 2C:44-1(a)(1). It is for the sentencing court to determine on remand whether this is such a case.

Moreover, a finding of aggravating factor one is not precluded because defendant could have been convicted of passion provocation manslaughter, N.J.S.A. 2C:11-4(b)(2), had he been tried. Given defendant's guilty plea, no factfinder has determined whether the evidence warrants a conviction for passion provocation manslaughter, so defendant's argument is premised upon speculation. The possibility that a jury could have convicted defendant of passion provocation manslaughter in a hypothetical trial does not preclude application of aggravating factor one to defendant.

23

In this case, the court failed to adequately explain its application of aggravating factor one to defendant. Its supplemental statement of reasons disclosed only that aggravating factor one was given moderate to significant weight, that defendant stabbed the victim several times and continued to beat him well beyond what was necessary for self-defense, and that defendant used excessive force. The court neither discussed in detail the circumstances of the offense nor identified the facts in the record -- distinct from the facts necessary to prove the elements of aggravated manslaughter -- that supported its finding.

Because the application of factor one was not supported by competent and credible evidence in the record, defendant must be resentenced. On remand, the sentencing court may apply aggravating factor one only if there is credible evidence in the record to support the finding. In its statement of reasons, the court should provide a detailed explanation of its findings with respect to this and any other factor applied.[1]

---

[1] Contrary to the State's position, the grand jury's application of the aggravating factor set forth in N.J.S.A. 2C:11-3(b)(4)(c) does not govern the sentencing court's consideration of aggravating factor one. N.J.S.A. 2C:11-3(b)(4)(c) requires a determination that "[t]he murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated assault to the victim." If a jury convicts a defendant at trial under N.J.S.A. 2C:11-3(a)(1) or (2) and finds that one of the aggravating factors prescribed in N.J.S.A. 2C:11-3(b)(4) applies, the sentencing court must

24

Aggravating factor nine invokes "[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(9). The sentencing court's determination is a "qualitative assessment" of the risk of recidivism, but "also involve[s] determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history." State v. Thomas, 188 N.J. 137, 153 (2006). "Deterrence has been repeatedly identified in all facets of the criminal justice system as one of the most important factors in sentencing," and "is the key to the proper understanding of protecting the public." Megargel, supra, 143 N.J. at 501 (citing State in the Interest of C.A.H. and B.A.R., 89 N.J. 326, 334 (1982)). "[D]emands for deterrence are strengthened in direct proportion

---

sentence the defendant to a term of life imprisonment without parole. This case was never tried, and no such determination was made. Moreover, nothing in the statutory text or legislative history of N.J.S.A. 2C:44-1(a)(1) suggests that sentencing courts should rely upon grand jury findings regarding the N.J.S.A. 2C:11-3(b)(4) aggravating factors in balancing the aggravating and mitigating factors for purposes of sentencing. Not only is the statutory language of N.J.S.A. 2C:44-1(a)(1) distinct from that of N.J.S.A. 2C:11-3(b)(4)(c), but the record before the sentencing court is necessarily different from that considered by a grand jury, including the presentence report prepared in accordance with Rule 3:21-2. See Randolph, supra, 210 N.J. at 348 (2012). Accordingly, the grand jury's finding of an aggravating factor under N.J.S.A. 2C:11-3(b)(4)(c) does not compel the sentencing court to apply N.J.S.A. 2C:44-1(a)(1). Moreover, the grand jury record is not before us.

to the gravity and harmfulness of the offense." C.A.H., supra, 89 N.J. at 337.

For purposes of N.J.S.A. 2C:44-1(a)(9), deterrence incorporates two "interrelated but distinguishable concepts," the sentence's "general deterrent effect on the public [and] its personal deterrent effect on the defendant." Jarbath, supra, 114 N.J. at 405 (citing C.A.H., supra, 89 N.J. at 334-45). In the absence of a finding of a need for specific deterrence, general deterrence "has relatively insignificant penal value." Ibid. (citing State v. Gardner, 113 N.J. 510, 520 (1989)). In weighing the applicability of aggravating factor nine, the sentencing court accordingly focuses on the need to deter the individual defendant "from violating the law." N.J.S.A. 2C:44-1(a)(9).

In this case, the question of specific deterrence is complicated by the trial court's finding of mitigating factor eight, which requires the sentencing court to conclude that the offense at issue was "the result of circumstances unlikely to recur." N.J.S.A. 2C:44-1(b)(8). Defendant contends that a sentencing court may never apply aggravating factor nine and mitigating factor eight in the same case, or, in the alternative, that a sentencing court may never give substantial weight to aggravating factor nine when mitigating factor eight is also being applied.

26

Because N.J.S.A. 2C:44-1's statutory language does not suggest, and we have never held, that aggravating factor nine and mitigating factor eight are inherently incompatible, we do not adopt such an inflexible rule. Although the cases cited by defendant, State v. L.V., 410 N.J. Super. 90 (App. Div. 2009), certif. denied, 201 N.J. 156 (2010), Briggs, supra, 349 N.J. Super. 496, and State v. Powell, 294 N.J. Super. 557 (App. Div. 1996), illustrate that aggravating factor nine and mitigating factor eight rarely apply in the same sentencing, they do not hold that the two factors are irreconcilable. In L.V., supra, the Appellate Division panel found no "overwhelming need to deter" the mentally disabled defendant, who gave birth after being sexually assaulted by her father and then threw the infant out the window at her father's direction. 410 N.J. Super. at 111 (emphasis omitted). Reasoning that the defendant was unlikely to "find herself in the same situation again," the court discounted specific deterrence in sentencing the defendant. Ibid. Briggs, supra, in which the defendant stabbed her former husband during an argument while both were intoxicated, similarly involved an offender deemed by the court to be unlikely to offend again. 349 N.J. Super. at 498-99, 505. When remanding for resentencing, the panel in Powell, supra, noted that specific deterrence was not a consideration because

27

the "defendant was unlikely to commit another crime." 294 N.J. Super. at 567.

In exceptional cases, even if the record demonstrates that the offense at issue arose in circumstances unlikely to recur, thus supporting a finding as to mitigating factor eight, a defendant could nonetheless pose a risk of recidivism, requiring specific deterrence within the meaning of N.J.S.A. 2C:44-1(a)(9). While such a case will be rare, we decline to hold that aggravating factor nine and mitigating factor eight can never apply in the same sentencing.

We also decline to find that aggravating factor nine is inappropriate in a case in which the defendant had no prior record, and the sentencing court accordingly applies mitigating factor seven, N.J.S.A. 2C:44-1(b)(7). Neither the statutory language nor the case law suggest that a sentencing court can find a need for deterrence under N.J.S.A. 2C:44-1(a)(9) only when the defendant has a prior criminal record.

As with aggravating factor one, the sentencing court's reasons for applying aggravating factor nine are insufficiently explained, and the application of this factor is not supported by competent and credible evidence in the record. If the court determines when it resentences defendant that aggravating factor nine applies, it should address both general and specific deterrence pursuant to N.J.S.A. 2C:44-1(a)(9). If it finds both

28

aggravating factor nine and mitigating factor eight, the sentencing court should explain how it reconciles those two findings. Finally, the court should explain in greater detail its assessment of the weight assigned to each aggravating and mitigating factor, and its balancing of those statutory factors as they apply to defendant. To avoid disparity in sentencing as the Legislature intended, to facilitate fair and effective appellate review, and to ensure that the defendant, the State and the public understand the reasons for the sentence, a trial court should explain its analysis of N.J.S.A. 2C:44-1's aggravating and mitigating factors with care and precision.

## VII.

The judgment of the Appellate Division is reversed, defendant's sentence is vacated, and the matter is remanded to the trial court for resentencing, consistent with this opinion.

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and ALBIN, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUDGE CUFF (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO. __A-18__                                      SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


STATE OF NEW JERSEY,

      Plaintiff-Respondent,

          v.

REINALDO FUENTES,

      Defendant-Appellant.


DECIDED _____January 7, 2014_____
          Chief Justice Rabner        PRESIDING

OPINION BY _____Justice Patterson_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE/ VACATE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | ---------------------- | -------------------- |
| TOTALS | 5 | |

30