# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5139-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MYRIAM JANVIER,

    Defendant-Appellant.

_____

Submitted February 25, 2019 – Decided May 1, 2019

Before Judges Messano, Gooden Brown, and Rose.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 12-06-1695.

Joseph E. Krakora, Public Defender, attorney for appellant (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the briefs).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

An Essex County grand jury indicted Myriam Janvier (defendant) and Krisla Rezireksyon Kris, a/k/a Venette Ovilde, charging them with the murder of Rezireksyon's eight-year-old daughter, C.R.K.,[1] and thirty-six other counts relating to the maltreatment of C.R.K. and Rezireksyon's two other minor children.[2] Following a hearing pursuant to N.J.R.E. 104(c), the judge denied in part, and granted in part, defendant's motion to suppress a statement given to law enforcement authorities.

Thereafter, defendant pled guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), three counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and three counts of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2).[3] The judge sentenced defendant to eighteen-years imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2,

---

[1] We use initials to protect the child's identity. R. 1:38-3(c)(9). Additionally, all the children were identified with initials and last name aliases in the indictment. The jury verdict sheet reflects the aliases used during trial.

[2] Rezireksyon was charged alone in count thirty-eight with third-degree hindering apprehension, N.J.S.A. 2C:29-3(b).

[3] Rezireksyon elected to go to trial. In a separate opinion also filed today in A-0469-16, we affirm her judgment of conviction and sentence.

A-5139-16T4

on the aggravated manslaughter conviction, with the remaining sentences running concurrent to that sentence.

Before us, defendant raises the following points:

POINT I

THE MOTION JUDGE APPLIED THE WRONG STANDARD THEREBY ERRONEOUSLY DENYING DEFENDANT'S MOTION TO SUPPRESS HER POST-MIRANDA[4] STATEMENT TO THE POLICE, WHICH WAS ELICITED USING THE QUESTION FIRST, WARN LATER PROCEDURE, BARRED UNDER STATE LAW. STATE V. O'NEILL, 193 N.J. 148 (2007).

POINT II

THE JUDGE ACCORDED UNDUE WEIGHT TO AGGRAVATING FACTORS ONE AND TWO BASED ON AN INCORRECT FACTUAL BASIS AND IMPROPERLY FOUND AGGRAVATING FACTOR FIFTEEN IN IMPOSING A MANIFESTLY EXCESSIVE SENTENCE THAT REQUIRES REVERSAL.

We have considered these arguments in light of the record and applicable legal standards. We affirm defendant's conviction and remand the matter for re-sentencing.

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

A-5139-16T4

We explained the significant details regarding the initial police investigation in our opinion, State v. Rezireksyon, A-0469-16. On the evening of May 22, 2011, after already securing a statement from Rezireksyon, Detectives Michael Anthony Davidson and Darryl Holmes, of the Essex County Prosecutor's Office and the Irvington Police Department, respectively, took a video-recorded statement from defendant. Davidson testified at the pre-trial hearing regarding the circumstances surrounding the statement, and the judge viewed the video.

Davidson responded to the apartment that defendant and Rezireksyon occupied to investigate the suspicious death of a child. Davidson saw the dead child's body, and was informed by another sergeant that Rezireksyon was the mother. As he approached "a makeshift door" in the apartment to investigate further, defendant asked Davidson why he was going into her room. Inside, Davidson found Rezireksyon's two other children huddled in the corner, but showing no signs of injury, except for some minor scars.

Defendant was transported to police headquarters. Davidson, who had already taken a statement from Rezireksyon, was unaware of the cause of C.R.K.'s death. He testified that defendant was not under arrest or a suspect and

was free to leave at any time. He did not administer <u>Miranda</u> warnings to defendant at the start of the interview, but did so approximately one hour and twenty minutes later, after concluding defendant "was more of a co-mother" of the children and "had more responsibility to the kids than [he] believed in the beginning" of the interview. The interview continued after defendant read the <u>Miranda</u> rights aloud from a printed form and signed the waiver.

In a written decision, the judge concluded that defendant's statements made prior to Davidson administering <u>Miranda</u> warnings, although voluntarily given, were the products of custodial interrogation and must be suppressed. He reached a different result regarding statements defendant made after the warnings.

The judge concluded that defendant knowingly and voluntarily waived her <u>Miranda</u> rights, her statement was "given voluntarily," and it was not the product of "psychological pressure, threats, . . . promises" or physical abuse. Citing <u>Oregon v. Elstad</u>, he rejected the argument that defendant's post-<u>Miranda</u> statement was the "fruit of the poisonous tree[]" for the proposition that the doctrine "does not apply to . . . a noncoercive <u>Miranda</u> violation." <u>See</u> 470 U.S. 298, 318 (1985) (holding that "a suspect who has once responded to unwarned

yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite <u>Miranda</u> warnings").

Defendant argues the judge "applied the incorrect, federal standard" in refusing to suppress her post-<u>Miranda</u> warning statements and instead should have followed the Court's holding in <u>O'Neill</u>, which, she contends, "banned" the "'ask first, warn later' interview technique." The State argues that by pleading guilty, defendant waived her right to appeal the motion judge's decision. Alternatively, the State argues the judge considered all relevant factors as outlined in <u>O'Neill</u> and properly admitted the post-<u>Miranda</u> warning portion of defendant's statement.

We agree that defendant's guilty plea foreclosed the ability to challenge the admission of her post-<u>Miranda</u> warning statements. <u>See</u> <u>State v. Knight</u>, 183 N.J. 449, 470 (2005) ("[A] defendant who pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea.") (quoting <u>State v. Crawley</u>, 149 N.J. 310, 316 (1997)). As the Court explained in <u>Knight</u>, there are generally only three exceptions to the waiver rule, none of which apply here. <u>Id.</u> at 471. The first exception is provided expressly by <u>Rule</u> 3:5-7(d), which permits a defendant to challenge on appeal an unlawful search and seizure of physical evidence after entering a

guilty plea.  Ibid.; see also State v. Robinson, 224 N.J. Super. 495, 500 (App. Div. 1988) ("[U]nsuccessful challenges to statements and Miranda violations cannot be raised on appeal after a guilty plea pursuant to Rule 3:5-7(d).").  The second, expressly permitted by Rule 3:28-6(d), permits a post-guilty-plea appeal from an order denying entry into a pre-trial intervention program (PTI).  Knight, 183 N.J. at 471.  Lastly, if a defendant enters a conditional guilty plea pursuant to Rule 3:9-3(f), she may appeal those issues expressly preserved.  Ibid.

In her reply brief, defendant argues we should consider her guilty plea a conditional plea because:  1) although the judge informed her at the time that she was waiving certain rights by pleading guilty, he failed to advise her she was waiving her right to appeal from the pretrial ruling; and, 2) she provided no written response to Question 4(e) on the plea form, which reads:  "Do you further understand that by pleading guilty you are waiving your right to appeal the denial of all other pretrial motions except the following:  [blank.]"

"The importance of the constitutional rights being waived when a defendant enters a guilty plea necessitates that the knowing and voluntary nature of the plea be demonstrated in the record so that it may be reviewed on appeal." State v. Simon, 161 N.J. 416, 443 (1999) (citing Boykin v. Alabama, 395 U.S. 238, 243 (1969)).  Hence, every judge in New Jersey engages in the questioning

of defendants on a daily basis throughout courtrooms of our state prior to accepting a guilty plea.  Question 4 on the plea form spotlights these rights.

Subpart (d) of the plea form specifically addresses the holding in Knight by indicating a defendant does not waive his or her right to appeal the denial of a motion to suppress pursuant to Rule 3:5-7(d), or rejection of an application to enter PTI.  Subpart (e) accomplishes two goals.  It specifically advises a defendant that he or she is waiving the right to appeal pretrial motions, unless the appeal from the decision on a specific pretrial motion is preserved by listing it on the plea form.

Here, defendant argues we should interpret the lack of any answer to subpart (e) as the equivalent of a conditional guilty plea.  However, Rule 3:9-3(f) requires that a defendant satisfy several conditions before a conditional guilty plea is accepted.  "[A] defendant may plead guilty while preserving an issue for appellate review only with the 'approval of the court and the consent of the prosecuting attorney.'" State v. Gonzalez, 254 N.J. Super. 300, 304 (App. Div. 1992) (quoting R. 3:9-3(f)).  This reservation of "the right to appeal from the adverse determination of any specified pretrial motion" must be placed "on the record . . . ." R. 3:9-3(f).

We have chosen not to apply the rule when "[s]trict adherence to [its] requirements . . . 'would result in an injustice.'" Gonzalez, 254 N.J. at 304 (quoting R. 1:1-2(a); see also State v. J.M., 182 N.J. 402, 410 (2005)) (considering the "important issue of whether [a] juvenile may present evidence at the probable cause portion of the waiver hearing[,]" despite the defendant's unconditional guilty plea, "[b]ecause the State failed to raise [the waiver] argument below").

Here, there is nothing to suggest that defendant intended to enter a conditional guilty plea. There is no evidence whatsoever in the record that satisfies the rule's two essential prerequisites — "approval of the court" and "consent of the prosecutor." The judge, the prosecutor and defense counsel simply never discussed the subject. Cf., State v. Stephenson, 350 N.J. Super. 517, 519 n.2, (App. Div. 2002) (rejecting the State's argument that the defendant waived his right to appeal where defense counsel at the plea hearing indicated an intention to appeal the denial of the defendant's pre-trial motion to suppress his statement to police). Nevertheless, to avoid any prospective petition seeking post-conviction relief on the issue, we address the merits of defendant's claim.

"[O]n appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings

are supported by sufficient credible evidence in the record.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). "[T]he clearly mistaken/clearly erroneous standard of appellate review" applies to factual findings made by the motion judge "based on video recording or documentary evidence . . . ." Id. at 381. Legal conclusions reached from those facts, however, are subject to our plenary review. State v. Hreha, 217 N.J. 368, 382 (2014) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

We agree with defendant that the judge's use of the Supreme Court's analysis in Elstad to decide the motion was a mistake of law. In O'Neill, the Court specifically forged a different path, relying on "our state law privilege against self-incrimination . . . ." 193 N.J. at 175. We must, therefore, "decide the controversy in the proper light of the applicable law." State v. Lyons, 417 N.J. Super. 251, 258 (App. Div. 2010) (citing State v. Steele, 92 N.J. Super. 498, 507 (App. Div. 1966)).

Contrary to defendant's assertion, the O'Neill Court did not "ban" the technique of question first, warn later. The Court specifically said, "[w]e emphasize that we are not pronouncing a bright-line rule." 193 N.J. at 181. Instead, the Court held that when determining whether to admit post-Miranda-

warning statements in this context, "courts should consider all relevant factors," which include:

> (1) the extent of questioning and the nature of any admissions made by defendant before being informed of his Miranda rights;
>
> (2) the proximity in time and place between the pre- and post-warning questioning;
>
> (3) whether the same law enforcement officers conducted both the unwarned and warned interrogations;
>
> (4) whether the officers informed defendant that his pre-warning statements could not be used against him; and
>
> (5) the degree to which the post-warning questioning is a continuation of the pre-warning questioning.
>
> [Ibid.]

"In a two-step interrogation case, courts must view the totality of the circumstances in light of the relevant factors and then determine whether the unwarned questioning and admissions rendered the Miranda warnings ineffective in providing a defendant the opportunity to exercise the privilege." Id. at 181-82.

Here, several of these factors weigh in favor or suppression. For example, Davidson questioned defendant for an extended period before administering the

11

warnings, the interview was virtually seamless, with the post-<u>Miranda</u> warnings portion flowing immediately from the earlier portion, and both parts of the interrogation were conducted in the same place by the same officers. The detectives never informed defendant that her pre-warning statements would not be used against her.

However, these factors only serve to inform a decision on the ultimate principal announced in <u>O'Neill</u>: "the admissibility of post-warning statements will turn on whether the warnings functioned effectively in providing the defendant the ability to exercise his state law privilege against self-incrimination." <u>Id.</u> at 180-81. In this case, we must conclude the <u>Miranda</u> warnings had the required effect on the interrogation that followed their administration. We reach that conclusion because on several occasions during the post-warning interrogation, defendant refused to answer certain questions. At one point, defendant made clear that she wished to continue with the interview, but did not want to respond to a particular question posed. These statements by defendant indicate she clearly understood her rights and how to exercise them; she had not "crossed a psychological bridge from which there was no turning back." <u>Id.</u> at 170.

A-5139-16T4

We affirm the denial of defendant's motion to suppress the post-<u>Miranda</u> warning portion of her statement to the detectives.

II.

In sentencing defendant, the judge found aggravating factors one, two, nine and fifteen. <u>See</u> N.J.S.A. 2C:44-1(a)(1) ("nature and circumstances of the offense, . . . including whether . . . it was committed in an especially heinous, cruel, or depraved manner"); (a)(2) ("seriousness of harm inflicted on the victim, including whether . . . defendant knew . . . the victim . . . was particularly vulnerable or incapable of resistance due to . . . extreme youth . . ."); (a)(9) (the need to deter defendant and others); and (a)(15) ("[t]he offense involved an act of domestic violence, as . . . defined in [N.J.S.A. 2C:25-19(a)]," and the defendant committed an "act of domestic violence on more than one occasion"). The judge also found mitigating factor seven. <u>See</u> N.J.S.A. 2C:44-1(b)(7) (no prior criminal history).

Defendant contends the judge found aggravating factors one and two based on facts unsupported by substantial evidence in the record, and aggravating factor fifteen, which, as a matter of law, did not apply. We agree.

"Appellate review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." <u>State v. Blackmon</u>, 202 N.J. 283,

13

297 (2010) (citing State v. Jarbath, 114 N.J. 394, 401 (1989)). We consider whether the trial court has "appl[ied] correct legal principles in exercising its discretion." Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 363 (1984)). As part of our review, we must determine whether "the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record . . . ." State v. Fuentes, 217 N.J. 57, 70 (2014). We will affirm the sentence if:

> (1) the trial court followed the sentencing guidelines;
>
> (2) its findings of fact and application of aggravating and mitigating factors were "based upon competent credible evidence in the record;" and
>
> (3) "the application of the guidelines to the facts" of the case does not "shock[ ] the judicial conscience."
>
> [State v. A.T.C., 454 N.J. Super. 235, 254 (App. Div. 2018) (alteration in original) (quoting State v. Bolvito, 217 N.J. 221, 228 (2014)).]

And, while a sentence imposed in accordance with a plea bargain, as this was, is presumptively reasonable, we should vacate and remand the matter for resentencing "if [the sentence] does not comport with the sentencing provisions of our Code of Criminal Justice." Fuentes, 217 N.J. at 71.

The State concedes that aggravating factor fifteen does not apply because an act of domestic violence, as defined by N.J.S.A. 2C:25-19(a), can only be

"inflicted upon a person protected under" the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. A person protected under the Act is a "[v]ictim of domestic violence" and generally must be "[eighteen] years of age or older or . . . an emancipated minor . . . ." N.J.S.A. 2C:25-19(d). The victims here were all very young children, and, therefore, defendant's offenses did not "involve[] an act of domestic violence . . . ." N.J.S.A. 2C:44-1(a)(15).

We may "remand for resentencing if the trial court considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue." Fuentes, 217 N.J. at 70 (citing State v. Pineda, 119 N.J. 621, 628 (1990)). The State urges us to avoid a remand because the error as to factor fifteen "had an inconsequential effect on the overall sentence." Perhaps. However, there are other reasons why a remand is required.

The judge premised his findings as to aggravating factor one upon "ample evidence in the record, including evidence from co-defendant's trial regarding the malnutrition of the children, the children's fractured bones from beatings, and the ropes used to tie the children to a radiator, which occurred over about three years," which demonstrated the "especially cruel manner and prolonged period in which the crimes were committed against the child victims." (emphasis added). In finding factor two, the judge noted that "the duration of the offenses

spanned <u>about three years</u>," during which the victims' "extreme malnourishment and injuries . . . prevented them from resisting defendant." (emphasis added).

However, the basis for finding defendant participated in the horrific treatment of the children for three years is, at the least, unclear. In her statement to police, defendant claimed she first started living with Rezireksyon and the children in August 2010, approximately nine months prior to the interrogation.[5] The indictment only alleged conduct occurred between August 2010 and May 2011, when C.R.K. was found dead in the apartment. Defendant did not specify the period of time she spent with Rezireksyon and the children during her guilty plea allocution. As a result, we agree there was no substantial credible evidence that defendant engaged in a three-year period of child abuse and neglect. We accordingly vacate the sentence imposed and remand for re-sentencing.

We affirm defendant's conviction. We vacate the sentence imposed and remand to the trial court for re-sentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] In the statement she gave to police, Rezireksyon said defendant had been living with her and the children for between three and six months.

A-5139-16T4