**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5305-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUARY BRITO, a/k/a HOWARD V. AYLLON,
JUARY L. BRITO, JUARY M. BRITO,
EDDIE LIME, and EDDIE M. LIME

    Defendant-Appellant.

_____

Submitted June 7, 2018 — Decided July 17, 2018

Before Judges Simonelli and Rothstadt.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Indictment No.
11-10-1032.

Joseph E. Krakora, Public Defender, attorney
for appellant (Michele E. Friedman, Assistant
Deputy Public Defender, of counsel and on the
brief).

Ann M. Luvera, Acting Union County Prosecutor,
attorney for respondent (Meredith L. Balo,
Special Deputy Attorney General/Acting
Assistant Prosecutor, of counsel and on the
brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

     After a Law Division judge denied defendant Juary Brito's motion to suppress evidence obtained through a Communications Data Warrant (CDW), he pled guilty to three criminal offenses, charged in separate indictments, including first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a).[1]  That charge arose from defendant fatally shooting his victim during a robbery on March 20, 2011.  The judge sentenced defendant pursuant to his plea agreement to twenty-two years on the aggravated manslaughter charge, a concurrent eighteen months on a fourth-degree offense,

_____

[1]  In October 2011, a Union County Grand Jury returned Indictment No. 11-10-1032, charging defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and/or (2) (count one); first-degree robbery, N.J.S.A. 2C:15-1 (count two); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count three); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count four); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five).  Count one was later amended to aggravated manslaughter, and defendant conditionally pled guilty to that charge preserving his right to challenge the denial of his suppression motion.

In February 2013, another Union County Grand Jury returned Indictment No. 13-02-0189, charging defendant with one count of fourth-degree throwing bodily fluid at a law enforcement officer, N.J.S.A. 2C:12-13.  And, under Indictment No. 13-02-1901, charged defendant with second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count one); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count two); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count three); and fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(1) (count four).

and a concurrent seven years on a second-degree charge, even though the judge had earlier agreed to limit his exposure to five years on that charge.

On appeal, defendant challenges the judge's decision on the suppression motion without a Franks[2] hearing and his sentences. For the reasons that follow, we affirm his convictions, finding no error in the denial of a Franks hearing, and reject defendant's challenge to his sentences, except for the second-degree aggravated assault, which we remand for resentencing.

The facts derived from the suppression motion's record are summarized as follows. On March 20, 2011, Elizabeth police officers responded to a call from a motel at approximately 1:30 a.m. Following the sound of a woman calling for help, the officers entered a room where they found a man, later identified as Julio Duarte, lying on the floor, displaying a gunshot wound in his abdomen.[3] Also located in the room were three individuals the

---

[2] Franks v. Delaware, 438 U.S. 154 (1978). "The primary purpose of the hearing [is] to determine whether the police made material misrepresentations and/or omissions in seeking . . . warrants from a Superior Court judge and, if so, whether the evidence gathered from those defective warrants needed to be suppressed." State v. Smith, 212 N.J. 365, 413 (2012).

[3] Duarte was later taken to a hospital where he was pronounced dead as a result of shots to his abdomen and chest.

police identified as Cassandra Perez, N.D., and a man called "Francisco."

As part of their ensuing investigation, police obtained sworn statements from the three individuals. Their statements confirmed that before police arrived, a black male, who was in the room with them, ordered Duarte and Francisco onto the ground and robbed them at gunpoint. Duarte, however, refused to comply and physically struggled with the perpetrator. During the struggle, the man shot Duarte twice. After Duarte fell, the gunman took Duarte's and Francisco's money, wallets, and cell phones, as well as Perez's cellphone, but failed in his attempt to take N.D.'s cellphone. Afterward, the shooter ran away.

According to N.D., she recognized the shooter and knew he was from the Ironbound section of Newark, but she did not know his name. She only knew him as "Doodle." N.D. explained that the man had a tattoo on his arm bearing the word "doodle" and that one of the o's was in the shape of a Playboy bunny. N.D. also had a cell number for Doodle, which she gave to the police. The officers attempted to secure information about the subscriber to the phone number, but the service provider had no individual subscriber information.

In order to locate the shooter, the officers conducted a "ping" of Francisco's phone. The phone was shown to be active in

4

Newark, in the Ironbound. However, at approximately 2:30 a.m., the phone was no longer detectable, as it had been turned off.

The officers were later able to locate a taxi driver who stated that he picked up an individual from the Ironbound section of Newark and dropped the passenger off at the motel where Duarte was shot. According to the driver, after he dropped off the man, he could not locate his own GPS device and believed the passenger had taken it from him. The driver gave a description of the passenger that matched the one given by the witnesses in the motel room.

The officers arranged for N.D. to call Doodle on the number she had and they recorded call. When he did not answer, N.D. left messages and shortly thereafter Doodle returned her call. N.D. told Doodle that Duarte died from his wounds and she inquired as to Doodle's location. Doodle did not respond and instead ended the call. He called back later, but refused to give N.D. any information and made it clear he did not want to discuss the matter over the phone.

Based on N.D.'s success in contacting Doodle, Detective Kevin Grimmer, of the Union County Prosecutor's Office (UCPO), believed that locating the cell phone Doodle called from would assist the police in locating and identifying Duarte's killer. The detective applied for an emergent CDW for a pen register device or trap and

trace device with caller identification for the cell phone associated with the number. During the call with the judge, the detective testified to the events leading up to their search for defendant, and stated that during N.D.'s call with Doodle, he threatened to kill her if she spoke to police. The judge considered the detective's sworn testimony over the phone and granted the telephonic application.

Based on the results of information obtained through the CDW, detectives were able to narrow Doodle's location to a four or five-square block area in Newark. Detectives from the UCPO took N.D. to the area to give her an opportunity to identify Doodle. When she saw him, N.D. pointed him out to the detectives. The police secured and detained the individual who was later identified as defendant.

Detectives then applied telephonically for an investigative detention order and a search warrant to detain defendant and obtain buccal swabs, fingerprints and similar identifying exemplars from him to compare to evidence found at the scene. A different judge considered and granted the application. After obtaining the identifying information and matching it to the evidence from the scene, defendant was arrested and charged with killing Duarte and other related crimes.

Defendant filed a motion to suppress the "GPS" identification information secured by the police that led to them locating him and the resulting evidence they obtained from him. In support of his motion, defendant argued that police failed to establish any exigency to warrant an emergent telephonic application and that the facts presented to the court were false. According to defendant, had the State been required to make a non-emergent application, the court would have had an opportunity to make credibility findings about the information provided by N.D., which according to defendant was fabricated, as proven by her status as a prostitute and being under the influence of crack cocaine when she provided the information. Defendant contended that the judge should have conducted a <u>Franks</u> hearing to determine whether the information provided by N.D. to the police was false.

After considering counsel's and defendant's written and oral arguments,[4] the first judge, who had issued the CDW, denied the motion, setting forth his reasons in a January 5, 2015 written

---

[4] On May 2, 2014, the parties initially appeared before the judge to argue defendant's motion. At that time, counsel argued that defendant's privacy rights had been violated and that a warrant was required to have N.D.'s call with defendant intercepted. After considering counsel's argument, the judge denied defendant's motion. Defendant, however, was dissatisfied with his counsel's argument, so the judge allowed him to submit a pro se brief, and later argue pro se and through counsel on November 12, 2014. The judge denied defendant's motion again on January 5, 2015.

A-5305-15T1

statement of reasons. In his decision, he cited to <u>Franks</u> and explained that its holding required "that a defendant, in order to obtain an evidentiary hearing as to allegations of false statements contained in the affidavit, must point out with specificity and supporting reasons the portion of the warrant affidavit claimed to be false[,]" and concluded that defendant had not met his burden. The judge found that even assuming N.D. was a prostitute and under the influence, neither status compelled a finding that the information she provided was false. The judge concluded by stating:

> Defendant does not provide any supporting reasons as to why [N.D.'s] statement was a fabrication; he points to no discrepancies in her statement, nor does he provide any evidence that would contradict her. Finally, even if an in-person application had been made in this case, the application would have been with Detective Grimmer as the affiant. Ms. [N.D.] would not have been a witness during this application. As such, [d]efendant has neither presented sufficient reasons entitling him to an evidentiary hearing, nor has he made any argument that supports his claim that there should be a preference for [an] in-person application.

The judge continued by citing to <u>State v. Pena-Flores</u>, 198 N.J. 6 (2009), analyzing and then rejecting defendant's contentions that there had to be a showing of exigency under the circumstances for the warrant to have been issued telephonically. He concluded, in any event, that an exigency existed as the

application was made on a Sunday when court was not in session. Finally, the judge similarly rejected defendant's contention that Grimmer "fabricated receiving authorization for the consensual interception of" N.D.'s conversation with defendant, finding that there is no requirement for a warrant for consensual interceptions.

On February 29, 2016, defendant pled guilty to one count of aggravated manslaughter as charged in Indictment No. 11-10-1032, as amended. Pursuant to the plea agreement, the State agreed to recommend a sentence not to exceed twenty-seven and one-half years, subject to a No Early Release Act's (NERA), N.J.S.A. 2C:43-7.2, eighty-five percent parole disqualifier. As set forth in the agreement, the judge stated he would limit defendant's sentence to no more than twenty-two and one-half years, with the same parole disqualifier, or defendant could withdraw his plea.

Defendant also pled guilty to second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), under Indictment No. 13-02-1901, subject to a similar arrangement. Here, the State agreed to recommend a sentence of seven and one-half years, with a NERA parole disqualifier, concurrent to the sentence imposed under Indictment No. 11-10-1032. The judge agreed that he would limit defendant's exposure to a concurrent term of no more than five years, subject to the same parole disqualifier.

Defendant also pled guilty to fourth-degree throwing bodily fluid at a law enforcement officer, N.J.S.A. 2C:12-13, under Indictment No. 13-02-0189. The State recommended eighteen months in prison, concurrent to defendant's other sentences. There was no supplemental agreement with the judge.

At defendant's sentencing on April 22, 2016, the judge sentenced defendant under Indictment No. 11-10-1032 (aggravated manslaughter) to twenty-two years, subject to a NERA period of parole ineligibility, a concurrent eighteen months under Indictment No. 13-02-0189, but then sentenced defendant to a concurrent seven years, subject to a NERA period of parole ineligibility, under Indictment No. 13-02-1901, instead of the five years stated in the plea agreement.

The judge entered judgments of convictions, which were later amended to correct defendant's date of birth. This appeal followed.

On appeal, defendant argues the following:

> POINT I
>
> THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING MR. BRITO A HEARING PURSUANT TO <u>FRANKS v. DELAWARE</u>. (PARTIALLY RAISED BELOW).

POINT II

THE MATTER SHOULD BE REMANDED FOR
RESENTENCING BECAUSE THE COURT
FAILED TO ADEQUATELY EXPLAIN THE
SENTENCE IMPOSED.

In a pro se supplemental brief, defendant also contends the following:

POINT I

THE TRIAL COURT COMMITTED
REVERSIBLE ERROR IN DENYING
DEFENDANT A HEARING PURSUANT TO
FRANKS v. DELAWARE.

We begin our review by addressing defendant's argument that he was entitled to a <u>Franks</u> hearing before the judge determined whether to issue the CDW being challenged. He contends that the detective's statement to the judge that Doodle threatened to kill N.D., which did not appear in the transcript of the call, and N.D. being a prostitute and under the influence of drugs, warranted the trial judge ordering a <u>Franks</u> hearing. We disagree.

We review the court's decision regarding the need for an evidentiary hearing for an abuse of discretion. <u>See</u> <u>United States v. Arbolaez</u>, 450 F.3d 1283, 1293 (11th Cir. 2006); <u>cf.</u> <u>State v. Broom-Smith</u>, 406 N.J. Super. 228, 239 (App. Div. 2009) (reviewing for abuse of discretion the judge's ruling denying discovery for purposes of a <u>Franks</u> hearing), <u>aff'd</u>, 201 N.J. 229 (2010). We

conclude from our review that the judge correctly determined a Franks hearing was not required.

As our Supreme Court has held:

> Our jurisprudence does not countenance the securing of a warrant through duplicitous means. For that reason, a warrant is invalid (1) if a police officer makes "material misstatements in a search warrant affidavit" with knowledge of the falsity of those statements or with reckless disregard for the truth and (2) if excision of the untruthful statements would leave the affidavit without probable cause for the issuance of the warrant. Smith, 212 N.J. at 420-21 (citations omitted).

Under Franks, a defendant is entitled to an evidentiary hearing to contest the veracity of a warrant affidavit, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" 438 U.S. at 155-56; accord State v. Howery, 80 N.J. 563, 566-68 (1979). The requirement for a hearing also "appl[ies] where the allegations are that the affidavit, though facially accurate, omits material facts." State v. Stelzner, 257 N.J. Super. 219, 235 (App. Div. 1992).

In making a "substantial preliminary showing[,]" a defendant "must allege 'deliberate falsehood or reckless disregard for the

truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." Howery, 80 N.J. at 567. These allegations should be supported by affidavits or other reliable statements; "[a]llegations of negligence or innocent mistake are insufficient." Broom-Smith, 406 N.J. Super. at 241 (quoting Franks, 438 U.S. at 171). Finally, a defendant must show that absent these misstatements, the search warrant lacks "sufficient [facts] to establish probable cause." Howery, 80 N.J. at 568.

The "substantial preliminary showing" requirement is designed "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." Franks, 438 U.S. at 170. Therefore, a defendant's veracity challenge should not be focused on "picking apart minor technical problems with a warrant application;" rather, it should address "warrants obtained through intentional wrongdoing by law enforcement agents[.]" Broom-Smith, 406 N.J. Super. at 240.

Applying these guiding principles, we find defendant's contentions about his entitlement to a Franks hearing to be without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons expressed by the judge in his cogent written decision denying defendant's motion to suppress.

Addressing his sentence, defendant argues that the judge failed to "articulate [his] basis for imposing the present sentence." At sentencing, the judge considered defendant's criminal history and the crimes to which he pled guilty, and concluded that he was "clearly convinced" that aggravating factors three, the defendant was likely to reoffend, N.J.S.A. 2C:44-1(a)(3), six, the extent of defendant's criminal history and the seriousness of the offenses to which he was pleading guilty, N.J.S.A. 2C:44-1(a)(6), and nine, the need to deter defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9), all applied.

The judge weighed the aggravating factors against mitigating factors and specifically addressed mitigating factor four, that there were substantial grounds tending to excuse or justify defendant's conduct though failing to establish a defense, N.J.S.A. 2C:44-1(b)(4). The judge addressed that factor in the context of the argument being advanced that defendant suffered from a "mental health condition", and found the factor to apply, but concluded that the lone mitigating factor was outweighed by the aggravating factors he found.

We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). Applying that standard, we conclude that defendant's arguments

14

about his sentences for aggravated manslaughter and fourth degree assault are without merit as we discern no clear abuse of the judge's discretion. See State v. Roth, 95 N.J. 334, 363 (1984). Defendant has failed to establish that (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts . . . makes the sentence clearly unreasonable so as to shock the judicial conscience." Fuentes, 217 N.J. at 70 (quoting Roth, 95 N.J. at 364-65); see also State v. O'Donnell, 117 N.J. 210, 215-16 (1989).

We part company with the judge however with regard to defendant's sentence for second-degree aggravated assault. As both parties agree, the judge failed to either sentence defendant to five years or allow him an opportunity to withdraw his plea, as stipulated to in defendant's plea agreement. For that reason, we are constrained to vacate his conviction as to the one charge and remand the matter for resentencing to impose a five-year term, or provide defendant with an opportunity to withdraw his plea as to that charge.

Affirmed in part; vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5305-15T1