**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1675-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DEXTER D. SULLIVAN,

    Defendant-Appellant.

_____

Submitted December 7, 2020 – Decided October 22, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-10-1648.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel Strashun, Designated Counsel, on the briefs).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

A jury convicted defendant Dexter D. Sullivan of third-degree burglary, N.J.S.A. 2C:18-2. The trial court granted the State's motion to impose an extended term of imprisonment on defendant as a persistent offender, N.J.S.A. 2C:44-3(a). Defendant was sentenced to an eight-year term of imprisonment with a four-year period of parole ineligibility.

On appeal, defendant raises the following arguments:

> POINT I
>
> DEFENDANT'S MOTION FOR A MISTRIAL SHOULD HAVE BEEN GRANTED AS A RESULT OF THE CUMULATIVE PREJUDICIAL TESTIMONY ELICITED FROM [L.D.][1] DURING TRIAL.
>
> POINT II
>
> THE TRIAL COURT HAD AN OBLIGATION TO SUA SPONTE CHARGE CRIMINAL TRESPASS WHERE THERE WAS A RATIONAL BASIS IN THE RECORD. (Not Raised Below).
>
> POINT III
>
> THIS MATTER SHOULD BE REMANDED FOR RESENTENCING.

We have thoroughly considered defendant's arguments in light of the record and applicable standards, and we affirm.

---

[1] We use initials to identify L.D. See R. 1:38-3(c)(12).

A-1675-18

I.

We summarize the trial court record as necessary to address the points raised by defendant on appeal.

A.

Ryan Tighe, a detective with the Middlesex County Prosecutor's Office, testified that on June 13, 2016, he applied for a search warrant in connection with an investigation of Chaz Sullivan, his corporation and L.D., his girlfriend, involving money laundering, theft by deception and other charges. Chaz[2] is defendant's brother. Chaz, L.D. and Chaz's mother shared a residence in Perth Amboy. Defendant lived there until March or April 2016.

The search warrant was executed on June 14, 2016. L.D. testified the police seized electronic equipment, financial records, marijuana and U.S. currency. Chaz was arrested that day but L.D. was not arrested until a month later. Afterwards, L.D. claimed she spoke with some of Chaz's friends to "see what [was] going on," and that defendant followed her. She returned home later, going to bed at 2 a.m., dressed only in panties.

She was awakened about 4:30 a.m. by "glass breaking in [her] kitchen." The sound was "coming from the back door." She turned on a light, "and . . .

---

[2] We use his first name because defendant's surname is the same.

looked into the kitchen to see [defendant] walking into my house with a gun." Another person was there, too, and he held her "in a bear headlock" while defendant took things from the bedroom. Defendant told her "to give him the f…ing money or he's gonna blow my f…ing brains out." She claimed he hit her in the face with the gun, suggesting his brother was incarcerated because she was a "snitching b.tch." She sustained two black eyes and a cut on her head. She received no medical treatment except for the "post-traumatic stress disorder [PTSD] it caused [her]." After they left, L.D. immediately drove to the police station.

On June 15, 2016, Jose Rosario, a detective with the Perth Amboy Police Department, was called to investigate an alleged armed robbery and assault of L.D. at her residence. She identified defendant as one of two assailants. She alleged defendant brandished a black handgun. There was damage to the back door, and the residence was in disarray. L.D. had a laceration on her head. When defendant was arrested later that day, the police did not find a gun or any of the items L.D. said were taken.

Defendant was charged under Indictment 16-10-01648 with second-degree conspiracy to commit armed robbery (Count One), N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2; first-degree armed robbery (Count Two), N.J.S.A. 2C:15-

4

1; second-degree burglary (Count Three), N.J.S.A. 2C:18-2; three counts of aggravated assault charged in the fourth, third and second-degree (Counts Four, Five and Six), N.J.S.A. 2C:12-1(b)(4), (2) and (1); second-degree unlawful possession of a weapon without a permit (Count Seven), N.J.S.A. 2C:39-5(b); and second-degree possession of a weapon for an unlawful purpose (Count Eight), N.J.S.A. 2C:39-4(a). Counts Four, Six and Seven were dismissed by the trial court before the case was submitted to the jury. Defendant's motion to act as his own attorney was granted prior to trial. [3]

### B.

On defendant's cross-examination of L.D., he asked her about a multi-defendant indictment in which she was a defendant charged with first-degree racketeering or theft by deception. This was an apparent reference to the money-laundering indictment. L.D. denied the charges but eventually blurted out "[w]ell, all [eighty-nine] defendants, including you, was charged with it." The court immediately instructed the jury, "[t]hat's stricken, folks. Disregard that." She then acknowledged she was a defendant in the money-laundering case, had pleaded guilty to hindering, and was participating in a pre-trial intervention program at the time of this trial.

---

[3] Defendant had stand-by counsel during his trial and sentencing.

In defendant's further cross-examination of L.D., he asked about a statement she posted online. The following colloquy occurred:

Q. Isn't it true that you are pretty active on social media, right?

A. Yeah.

[Assistant Prosecutor]: Judge, - -

The Court: Well, I don't know where it's going.

[Assistant Prosecutor]: Okay.

Q: And, that you have quite a large following, correct?

A. What is the relevance here? What does my personal life have to do with what you did to me?

Q. Well, you posted a statement on -- online, correct?

A. No, it must have been an old Facebook from a long time ago. If it's about how you sexually assaulted me, Dexter, --

[Defendant ]: Your Honor, --

[Assistant Prosecutor]: Judge, --

A. That's what the -- that's what the paragraph said. It said I was --

The Court: Okay.

A. -- that I was touched.

A-1675-18

The Court: Ms. --

A. I was in my panties.

The Court: Ms. -- [L.D.] -- that's stricken.

A. Because I never told any officer I was assaulted.

[Assistant Prosecutor]: Stop talking.

The Court: There's no question in front of you. Folks, go home. Tomorrow morning, 9:00. We'll pick up where we left off here. Disregard the last exchange from this witness.

The next day, defendant requested a mistrial based on the "very highly prejudicial comments" made by L.D., that he "sexually assaulted her" and was a "co-defendant in the money laundering case." He argued these were "highly prejudicial, inflammatory and cannot be cured by instructions to this jury." The Assistant Prosecutor objected, arguing defendant opened the door but that a curative instruction would remedy the issues, and offered a curative instruction for each. Stand-by counsel voiced criticism. The court expressed concern that a curative instruction might "simply re-ring[] the bell" by highlighting the issues again. It allowed the parties to listen to the court recording, and deferred its decision. Later, L.D. did not mention either issue, testifying she wanted defendant prosecuted "because [he] hit me in the face with a gun."

7

The trial court denied defendant's motion for a mistrial finding L.D. blurted out statements because she was "very excitable, agitated, nervous, anxious." There was no misconduct by the prosecutor. The court immediately told the jury to disregard L.D.'s statement that defendant was part of the money laundering indictment. The court agreed with the Assistant Prosecutor that the money laundering indictment was an implicit part of the case: the police executed a search warrant on June 14 based on this; there was testimony that on June 15, defendant asked L.D. about the money and accused L.D. of being a "snitch" because she was not arrested with his brother. Reference to the indictment was brief and was not "all that significant."

The court noted L.D.'s reference to sexual assault was inappropriate but it was also "volunteered, blurted out by this agitated, angry, frustrated, extremely nervous . . . witness." The court immediately told the jury to disregard this. The issue was raised on cross-examination by defendant, who "contributed" by asking open ended questions.

The trial court found neither of the two issues "standing alone or taken together in combination in the aggregate" required a mistrial. It already directed the jury to disregard both remarks. The court declined otherwise to

"impose" an additional curative instruction unless the defense requested this, and defendant never made this request.

## II.

### A.

Defendant argues the trial court erred by denying his motion for a mistrial. He contends L.D.'s testimony was "rife with improper, prejudicial commentary," which included that defendant had been indicted on other charges and had sexually assaulted her. Although the court addressed the two remarks, defendant argues this was not done effectively. The court did not offer a curative instruction. Defendant argued there was limited evidence in this case and, thus, that either statement could have "tip[ped] the scales" in the State's favor.

Motions for mistrial are "addressed to the sound discretion of the [trial] court; and the denial of the motion is reviewable only for an abuse of discretion." State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019) (quoting State v. Winter, 96 N.J. 640, 647 (1984)). "The same deferential standard that applies to the mistrial-or-no-mistrial decision applies to review of the curative instruction itself." Ibid. (citing Winter, 96 N.J. at 647).

A-1675-18

A court should consider three factors: "First, a court should consider the nature of the inadmissible evidence the jury heard, and its prejudicial effect. 'The adequacy of a curative instruction necessarily focuses on the capacity of the offending evidence to lead to a verdict that could not otherwise be justly reached.'" Id. at 505 (quoting Winter, 96 N.J. at 647). "Second, an instruction's timing and substance affect its likelihood of success. As for timing, our Court has held that a swift and firm instruction is better than a delayed one." Id. at 505-06. "Third, a court must ultimately consider its tolerance for the risk of imperfect compliance." Id. at 507 (citing Bruton v. U.S., 391 U.S. 123, 135 (1968)). "By contrast, a non-constitutional error 'shall be disregarded by the appellate court "unless it is of a nature as to have been clearly capable of producing an unjust result."'" Id. at 507-08 (quoting State v. LaPorte, 62 N.J. 312, 318-19 (1973)).

We are satisfied after considering the entire record that the trial court exercised appropriate discretion in denying defendant's motion for a mistrial. Defendant raised two issues in the mistrial motion: reference to an indictment against defendant and an allegation of sexual assault. The remarks were not solicited by the prosecution but by defendant in poorly executed attempts to cross-examine L.D. The witness's remarks were isolated. The court

A-1675-18

immediately instructed the jury to disregard both remarks and stuck them from the record. Defendant never argued to the trial court — as he does now — that he did not have the opportunity for a curative instruction and in fact his stand-by counsel argued a curative instruction would not fix the problem.

The trial court twice solicited the defense to advise whether an additional curative instruction was needed but defendant never responded. The court did not want to raise the issues again before the jury if the defense did not want them raised. See State v. Brown, 138 N.J. 481, 535 (1994) (providing that a party affected by the inadmissible evidence can "forego such an instruction for tactical reasons"), overruled on other grounds, State v. Cooper, 151 N.J. 326 (1997). The trial court addressed the issue through the jury instruction. It instructed the jury not to consider information that was stricken, providing "[t]his means that even though you may remember the testimony, you [a]re not to use it in your discussions or deliberations."

Defendant alleged prejudice, but it is clear the jury discounted much of L.D.'s testimony. Defendant was acquitted of armed robbery, second-degree robbery, theft, second-degree burglary, aggravated assault, and simple assault. There was evidence to support the third-degree burglary charge through Detective Rosario confirming the residence door was damaged and providing

11

independent proof the structure was entered without a license or privilege to do so.

The theory of the case was that defendant was retaliating because his brother was arrested but L.D. was not. The money laundering indictment was referenced during the trial. It was the reason the residence was searched the day before. L.D. was accused of being a "snitch" in connection with that indictment when Chaz was arrested, and she was not. Defendant used L.D.'s hostility toward him on cross-examination during his summation. On this record, we do not discern the trial court abused its discretion by denying a mistrial.

B.

Defendant argues the trial court had an obligation to sua sponte charge the jury on criminal trespass, arguing there was a rational basis in the record to include this lesser included offense. He contends he would not have been convicted of burglary if it were included. We find no abuse of discretion by the trial court.

This issue was raised when the verdict sheet was reviewed. After reference to the third-degree burglary charge, the court stated:

> The Court: I didn't even think of it. I don't think it's -
> -I think it's kind of going a little bit too far, but

12

> criminal trespass I think might be -- there has to be a
> rational basis to acquit of the greater, convict of the
> lesser. I don't see that.
>
> [Stand-by Counsel]: Yeah.
>
> The Court: You're shaking your head no, right
> [Counsel]?
>
> [Stand-by Counsel]: Yes.
> The Court: Meaning, you don't want -- you don't
> think we need the criminal trespass.
>
> [Stand-by Counsel]: I would ask for it, but I don't --
> in all candor, I --
>
> The Court: All right.
>
> [Stand-by Counsel]: -- don't see the basis for it.
>
> The Court: I don't either.
>
> [Stand-by Counsel]: Okay.

Defendant also did not interpose an objection or argue for its inclusion.

Following his conviction, defendant filed a motion for acquittal, arguing

his request for an instruction on criminal trespass was rejected by the court.

Noting the factual inaccuracy of defendant's assertion, the trial court explained

there was no basis to instruct the jury on criminal trespass.

> [T]here has to be a rational basis to acquit of the
> greater and convict on the lesser. There is none.
> Because they would have to find that you went in
> there for no reason. At 4:30 in the morning, you were

13

A-1675-18

bored and decided to break in because the locks were changed and you broke the glass just to go in for no particular reason . . . . It's totally specious against this record.

The court noted "the whole factual scenario was that this was retaliatory."

When a trial court denies a defendant's request to instruct the jury on a lesser-included offense, we must determine "whether the evidence presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser." State v. Alexander, 233 N.J. 132, 142 (2018) (quoting State v. Cassady, 198 N.J. 165, 178 (2009). "In the absence of a request or an objection, we apply a higher standard, requiring the unrequested charge to be 'clearly indicated' from the record." Id. at 143. Under N.J.S.A. 2C:1-8(e), "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."

An offense is included in another when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." N.J.S.A. 2C:1-8(d)(1). Criminal trespass is a lesser included offense of burglary because both offenses require proof that a defendant entered a structure without the license or privilege to do so. State v. Clarke, 198 N.J. Super. 219, 225-26 (App. Div. 1985). However, burglary

14

requires proof of an additional element, which is "with purpose to commit an offense therein or thereon." N.J.S.A. 2C:18-2(a).

In this case, we discern no error by the trial court. Defendant did not have a license to be at L.D.'s residence. There was testimony he left the residence a few months earlier and the locks to the door had been changed. The door was broken upon entry. There was testimony that when defendant entered, he demanded money and accused L.D. of being a "snitch." There was nothing in the record to support defendant's present argument that he went to the residence simply to check on it. In his statement to the police, he did not even acknowledge going there in the early morning of June 15, 2016.

### C.

Defendant argues we are required to remand the case for resentencing because the sentence is excessive. He contends an extended term of eight years with a four-year parole disqualifier, improperly focused on the offender, not the offense.

Our review of the length of a sentence is limited. State v. Miller, 205 N.J. 109, 127 (2011). A trial court's sentencing decision shall not be disturbed absent an abuse of discretion or where the trial judge is clearly mistaken. State v. Fuentes, 217 N.J. 57, 70 (2014). A reviewing court "must not substitute its

judgment for that of the sentencing court."  Ibid.  (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)).

We must affirm the sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

"A judge's sentencing analysis is a fact-sensitive inquiry, which must be based on consideration of all the competent and credible evidence raised by the parties at sentencing."  State v. Jaffe, 220 N.J. 114, 116 (2014).

Under N.J.S.A. 2C:44-3(a), a sentencing court has discretion to impose an extended sentence when the court finds that defendant is a persistent offender.  State v. Pierce, 188 N.J. 155, 161 (2006).  No one disputed that defendant satisfied this definition. [4]  The trial court found the predicate

---

[4]  "A persistent offender is a person who at the time of the commission of the crime is [twenty-one] years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever

convictions consisted of two counts of third-degree drug possession from 2016 and fourth-degree witness tampering from 2014. Individuals convicted of a third-degree crime, who are eligible for an extended term, may be sentenced up to ten years. See N.J.S.A. 2C:43-7(a)(4).

The court also considered defendant's conviction for second-degree robbery and other offenses arising from an armed and violent home invasion when defendant was seventeen. The victim's wheelchair was destroyed during the burglary. Defendant was tried as an adult for these offenses, receiving a nine-year sentence.

The prosecutor argued defendant was released to a halfway house on parole. He was arrested on parole violation and returned to prison. A month after his release, he was arrested on drug offenses. He was released on probation in February 2016, and four months later, committed this burglary. The court observed defendant could be "ruthless," and "mean and violent," and that an extended term was "necessary for . . . the protection of the public."

The trial court considered the aggravating and mitigating sentencing factors. He found aggravating factors three, six and nine. See N.J.S.A. 2C:44-1(a)(3) (the risk of re-offense); (a)(6) (the extent of defendant's prior record);

is later, is within [ten] years of the date of the crime for which the defendant is being sentenced." N.J.S.A. 2C:44-3(a).

17

and (a)(9) (the need to deter defendant and others). The court gave aggravating factor nine heavy weight because the court considered defendant "potentially . . . an extremely dangerous guy." Aggravating factor three was found because if "someone has crossed you, there's going to be a very high risk of commission of another offense." Aggravating factor six was present because of the extent and seriousness of his prior record. Although the drug possession cases and witness tampering convictions were "not all that serious," the court noted the majority of defendant's twenties were spent in prison "on a very, very serious violent crime conviction."

The judge found no mitigating factors, rejecting defendant's assertion that some applied.[5] Defendant was convicted of a residential burglary in the early morning hours, which itself posed the threat of serious harm. There was no established defense or justification. His willingness to provide community service was "inapposite" because the court noted anyone would do this to avoid incarceration. He could not compensate for the emotional damage to the

---

[5] See N.J.S.A. 2C:44-1(b)(1)(conduct neither caused nor threatened serious harm); (b)(2) (no contemplation conduct would cause or threaten serious harm); (b)(4) (substantial grounds to excuse or justify defendant's conduct); (b)(6)(compensation for the victim); (b)(8)(conduct resulting from circumstances unlikely to recur); (b)(9)(character and attitude indicate defendant unlikely to recommit); (b)(10)(defendant particularly likely to respond affirmatively to probationary treatment); and (b)(11)(imprisonment would entail excessive hardship).

victim. His conduct was likely to reoccur. Defendant's record showed he was not amenable to probation or parole, having violated both in the past. The court did not find imprisonment would pose an excessive hardship. The court concluded the aggravating factors outweighed the lack of mitigating factors.

We find no abuse of discretion by the trial court in sentencing defendant. The trial court followed the statutory guidelines. It considered defendant's criminal history and explained why the public needed protection. The court considered defendant's conviction for the crimes committed when he was seventeen. The court observed defendant could be "ruthless," and "mean and violent," and that an extended term was "necessary for . . . the protection of the public."

There was substantial evidence in the record to support the trial court's findings of aggravating and mitigating factors and its application of an extended term sentencing. Where a trial court has followed the sentencing guidelines, and its findings of aggravating and mitigating factors are supported by the record, we will only reverse if the sentence "shocks the judicial conscience" in light of the particular facts of the case. State v. Roth, 95 N.J. 334, 365 (1984). That is not the case here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1675-18