**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1886-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MICHAEL GARLAND, a/k/a
MICHAEL SIMPSON,
WAYNE SIMPSON, and
WAYNE GARLAND,

      Defendant-Appellant.

_____

Argued January 4, 2022 – Decided January 21, 2022

Before Judges Fisher, DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 19-03-0648.

Ashley Brooks, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief; Ashley Brooks, on the brief).

John J. Santoliquido, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause

for respondent (Cary Shill, Acting Atlantic County Prosecutor, attorney; Melinda A. Harrigan, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant was convicted of assault and related charges when he struck Raymond Rivera with his motor vehicle in a parking garage on December 31, 2018. Defendant argues, in part, that the trial judge erred by instructing the jury on self-defense rather than on the defense of necessity because the former tended to contradict his testimony that he was unaware he hit anyone with his motor vehicle. We find no merit in this, or in defendant's other arguments, and affirm.

On December 31, 2018, a group of roughly ten friends and relatives made last minute plans to meet at the Golden Nugget Casino in Atlantic City to celebrate the new year. Due to the group's size, multiple cars were needed to make the journey from Newark; defendant agreed to drive part of the group, which arrived in Atlantic City just before midnight.

Once inside the casino, the group began drinking and playing at slot machines but soon decided to go to a nearby nightclub. By this time, Kawana Echols had become "sloppy drunk" and began "hugging and screaming on [] everybody" around her. Some group members testified defendant appeared visibly irritated by Echols's behavior.

As the group made their exit toward the parking garage, Echols's brother and defendant "got into each other's faces" after, in the former's view, defendant "disrespect[ed]" Echols. Defendant acknowledged in his own testimony that his mood was sour due to Echols's "drunk . . . incoherent" behavior and that he "did not want to proceed with the evening" because of it. After the brief altercation with Echols's brother, defendant walked alone through the garage to locate his car.

Raymond Rivera was part of the group. He and others located their car on a lower level and began driving up through the parking garage to meet with the remainder of the group. At one point, when Rivera's car encountered defendant, Rivera asked defendant if he was "trying to leave [Rivera's] people." Kaitlyn Zorn, a passenger in Rivera's car, testified that defendant began "pulling the car doors" after Rivera called out to him. In response, Rivera parked, got out of his car, and began arguing more intensely with defendant. Kaitlyn and the other passengers pulled Rivera back into his car again, after which defendant continued walking to the floor where he had parked.

When defendant reached his car, he observed ten to eleven people, including Rivera, "standing in the roadway around the front" end and felt he was "outnumbered." He entered the driver's seat of his vehicle and shut the door.

3

One man entered the passenger's seat and another approached the driver's window and warned defendant, as did others, about not leaving Echols behind. Another woman and Echols rushed to enter defendant's car before he left and, in the process, the other woman spilled the contents of her purse on the ground directly behind the car and bent to retrieve them. According to one witness's testimony, it was at that moment that defendant placed the car in reverse and the women behind the vehicle called out to "put it back in park."

By this time, Rivera had approached defendant's car from the passenger's side, reached in, and punched defendant. Rivera was pulled out of the car by several other group members and Rivera walked around defendant's car, saying, according to one witness words to the effect that "it's not even worth it."

Defendant testified that the assault continued after Rivera walked away, and that other group members continued to punch and kick him through the car's open doors. He also testified that he was unable to see clearly in front of him because of this ongoing struggle, and, out of fear for his safety, he "hit the gas"; seconds later the vehicle "hit the wall and bounced backwards." According to one witness, Rivera was walking in front of defendant's car "right in front of the hood" when the defendant "t[ook] off, hit [Rivera] and carr[ied] him all the way . . . to the wall on the other side of the garage." While the "bumper of the car

4

was . . . tangled in [Rivera]'s legs", defendant immediately exited the car and ran from the garage back to the casino floor. Defendant testified that he ran back to the casino in search of security guards because he was afraid he would be attacked by the other group members; he claimed he was unaware he hit someone with his car.

Defendant was charged with: second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2); third-degree assault by auto, N.J.S.A. 2C:12-1(c)(2); fourth-degree assault by motor vehicle, N.J.S.A. 2C:12-1(c)(1); third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2(a); and fourth-degree causing serious bodily injury while driving with a suspended license, N.J.S.A. 2C:40-22(b). After a three-day jury trial, defendant was acquitted of third-degree aggravated assault with a deadly weapon but convicted of the other charges. After the denial of a motion for a new trial, defendant was sentenced to a nine-year prison term for the second-degree aggravated assault, subject to an eighty-five percent period of parole ineligibility, and a consecutive five-year prison term for third-degree endangering an injured victim. The other convictions either merged or lesser concurrent terms were imposed.

Defendant appeals, arguing: (1) the assault convictions "must be reversed because the trial court plainly erred when it provided a self-defense charge" and failed to instruct the jury on the affirmative defense of necessity; (2) the ineffectiveness of his trial counsel; and (3) the sentence imposed was excessive because the judge failed to find "clearly present mitigating factors." We reject all these arguments.

I

Defendant argues that no evidence was provided at trial to support a self-defense jury charge even though defendant's theory before and at trial – and until filing this appeal – was that he acted in self-defense. Prior to trial, defense counsel gave notice, pursuant to Rule 3:12-1, of defendant's intention to "rely on the affirmative defense of justification . . . self[-]defense." At trial, the judge gave defense counsel several opportunities to review the jury charge and to object or request modifications; defense counsel, however, made no objections to the charge containing self-defense instructions nor did counsel complain of the lack of defense-of-necessity instructions. And, during his summation, defense counsel argued, consistently with the strategy suggested by defendant's Rule 3:12-1 notice, that the State "[f]ailed to prove that [defendant's] conduct was not valid self[-]defense."

Now, having been convicted, defendant argues for the first time that self-defense under N.J.S.A. 2C:3-4 was not the appropriate theory and that the judge should have instructed the jury that defendant acted out of necessity, as authorized in appropriate cases by N.J.S.A. 2C:3-2. In light of defendant's position at trial – having given pretrial notice of his reliance on self-defense, having failed to object to the charge that conformed to that request, and having argued to the jury that he acted in self-defense – we review the judge's charge through the prism of Rule 2:10-2's plain error standard. Accordingly, we must determine whether the judge's inclusion of self-defense instructions, her exclusion of a factually-tailored necessity instruction, or both, were not only erroneous but also "clearly capable of producing an unjust result."

To start, we are satisfied the facts elicited during trial provided a rational basis for a self-defense instruction in accordance with N.J.S.A. 2C:3-4. See State v. Galicia, 210 N.J. 364, 390 (2012) (quoting State v. O'Carroll, 385 N.J. Super. 211, 236 (App. Div. 2006)). We are also persuaded toward this view because trial judges must "carefully refrain from preempting defense counsel's strategic and tactical decisions." State v. Perry, 124 N.J. 128, 162 (1991).

There was ample evidence to support a theory that defendant's conduct, for which he was charged and convicted, resulted from his belief that his use of

7

force was "immediately necessary for the purpose of protecting himself against the use of unlawful force." N.J.S.A. 2C:3-4(a).[1] To employ the justification of self-defense, a defendant must have an "actual, honest, reasonable belief" that the force used was necessary. Galicia, 210 N.J. at 389; see also State v. Kelly, 97 N.J. 178, 198 (1984). The trial was replete with evidence to support this defense.

For example, defendant testified he could "feel the vibe" of a threat when his car was surrounded. He testified how, once inside his car, he could not keep out intruders and was unable to avoid being punched and kicked. He described how others were "reaching into the car [and] attempting to pull [him] out of the car" as he put it in drive. Defendant repeatedly told the jury about "struggling" with individuals who were succeeding in getting into his car, even after he knew Rivera had been pulled from the passenger's side. Rivera had twice fought with defendant that evening, and it was reasonable to glean from defendant's own testimony that defendant was claiming he believed force was necessary to protect himself when he hit the accelerator and struck Rivera with his vehicle.

---

[1] We are mindful of the limitation of N.J.S.A. 2C:3-4 recognized by the Supreme Court in State v. Fowler, 239 N.J. 171 (2019), which we discuss later in this section of the opinion.

Having been convicted, defendant now argues that self-defense under N.J.S.A. 2C:3-4 was not the right defense and that the judge erred by "shoehorn[ing] the facts" of the case into this incorrect affirmative defense. Defendant argues that despite the absence of a request the judge should have provided instructions on the defense of necessity, which provides that conduct otherwise considered an offense is "justifiable by reason of necessity to the extent permitted by law and as to which neither the code nor other statutory law . . . provides exceptions or defenses dealing with the specific situation involved and a legislative purpose . . . does not otherwise plainly appear." N.J.S.A. 2C:3-2(a). This defense has been found applicable when: (1) there is a "situation of emergency" that arose through no fault of the defendant; (2) the emergency is "so imminent and compelling as to raise a reasonable expectation of harm" in the defendant; (3) the emergency presents no reasonable opportunity for the defendant to avoid injury without the criminal act; and (4) the injury resulting from the emergency is of "sufficient seriousness to outmeasure the criminal wrong." State v. Romano, 355 N.J. Super. 21, 29 (App. Div. 2002) (citing State v. Tate, 194 N.J. Super. 622, 628 (App. Div. 1984)). This so-called "'choice-of-evils' defense" calls for determining whether the criminal conduct would be justified when the "evil avoided is greater than that sought to be avoided by the

A-1886-19

law defining the offense committed." State v. Tate, 102 N.J. 64, 73 (1986) (citing Edward B. Arnolds & Norman F. Garland, The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil, 65 J. Crim. L. & Criminology 289 (1974)). As we said in Romano, integral to a court's determination of whether a defense of necessity applies is whether the Legislature, had it foreseen the defendant's circumstances, would have created an exception to the enumerated offense. 355 N.J. Super. at 29-30.[2]

The evidence did not suggest a circumstance as intimidating as in Romano, where the defendant was physically jumped by three men in a parking lot before entering his car, severely beaten, and told "you're dead after this, you'll see what's going to happen" while his assailants jumped on the roof of his car. Id. at 26. Defendant testified here that he was surrounded and being intimidated by others when he drove his car into Rivera. We agree that the judge would not have erred in instructing the jury that it could acquit if it found that

---

[2] In Romano, we found error when the judge failed to charge on the defense of necessity where the defendant drove while intoxicated, contrary to N.J.S.A. 39:4-50, to escape a possibly deadly attack from a group of strangers and the Legislature had not weighed the value of such an escape against the value of preventing drunk driving. Ibid. The facts revealed that the defendant did not "create or participate in the circumstances bringing about the harm he sought to avoid" and "had no other reasonable alternatives available to him." Id. at 32.

A-1886-19

defendant acted out of a necessity or self-preservation in light of the threat he believed posed by those surrounding his vehicle.

In other words, in one sense, defendant's current argument – as opposed to that which he pursued at trial – was that self-defense is limited in a way that arguably makes it inapplicable here. N.J.S.A. 2C:3-4 declares that the use of force is justifiable when the defendant reasonably believes the use of force against a person is necessary to protect himself "against the use of unlawful force by such other person" (emphasis added). In this context, a proper application of the statute would only mean that if the jury found defendant reasonably believed the use of force against Rivera was necessary to protect himself from the use of unlawful force by Rivera, then this defense would entitle the jury to acquit. But, if the jury found that defendant reasonably believed the use of force against Rivera was necessary to protect himself from the use of unlawful force by others, then N.J.S.A. 2C:3-4 would not apply; in that instance, a defense should be tailored to the circumstances as authorized by N.J.S.A. 2C:3-2.

We do not disagree with this view of the statutes in question. In Fowler, 239 N.J. at 186-87, where the defendant did not receive a self-defense charge because the evidence revealed that he shot a bystander while defending himself

against another, the Supreme Court not only interpreted N.J.S.A. 2C:3-4 as applying only when force is used against an aggressor – not a bystander – but also recognized that a finding of justification to exonerate the defendant must come from some other legal source.

But here, the trial testimony contained numerous versions, not all consistent, about the chaotic circumstances preceding defendant's striking of Rivera with his car. Some of these versions would arguably support a jury finding that defendant acted to protect himself from Rivera's aggression, so the self-defense instructions were appropriate. But there was also evidence that Rivera had ceased being an aggressor and had become a bystander, and that defendant was instead acting to escape what he believed was the imminent danger presented by individuals other than Rivera, who were surrounding his vehicle. Because of evidence supporting this other version it cannot be said that defendant was not entitled to a jury instruction that would have allowed the jury to find he acted justifiably in attempting to escape the aggressors that surrounded his vehicle and were attempting to attack him.

Having said that, like the circumstances in Fowler, 239 N.J. at 186-87, we are satisfied that the particular self-defense instructions given by the trial judge were broad enough to fit all the alternative defense theories. The judge here

12

instructed the jury that it could acquit if defendant acted out of fear of harm from others, and the judge did not limit the application of self-defense to a theory that the aggression came from Rivera. That is, in her instructions, the trial judge did not draw the distinction that the Fowler Court recognized: that the self-defense statute justifies the defendant's use of force only on the person using unlawful force against him. Id. at 185-86. The judge instead told the jury that "self defense is the right of a person to defend against any unlawful force" (emphasis added), without limiting the source of that force to the injured victim, and that

> Self[-]defense is . . . the right of a person to defend against seriously threatened unlawful force that is actually pending or reasonably anticipated. When a person is in imminent danger of bodily harm the person has the right to use force or even deadly force when the force is necessary to prevent the use against him of unlawful force. The force used by the defendant must not be significantly greater and must be proportionate to the unlawful force threatened or used against the defendant.

Nowhere in these instructions or the additional amplification provided by the judge that followed this quoted portion, did the judge limit defendant's claim of self-preservation solely to a defense against Rivera's aggression. The charge fairly included what defendant now claims for the first time was missing: that defendant's actions were justified because of his fear of harm from either Rivera or others.

13                                                      A-1886-19

In short, while defendant is partially correct that self-defense as defined in N.J.S.A. 2C:3-4 would not have excused his use of force if he feared the use of force against him not from Rivera but from others and that what he claimed occurred might have been justified by the circumstances as authorized by N.J.S.A. 2C:3-2, the judge's instructions covered all the alternate factual theories and advised the jury that defendant's conduct could be found justifiable regardless of the source of the alleged unlawful force directed toward him. We thus conclude that the judge's instructions were neither erroneous nor, if they were, clearly capable of producing an unjust result. Had the jury found credible that defendant reasonably believed that hitting the accelerator was immediately necessary to protect himself from the use of force by Rivera, by others, or by Rivera and others, and was not disproportionate to the harm he reasonably believed would befall him, the judge's instructions authorized the jury to acquit defendant.

II

Defendant's claim of his trial attorney's ineffectiveness is based on his argument that counsel pursued "a patently unreasonable and untenable defense" of self-defense that contradicted defendant's testimony while also failing to assert a defense of necessity.

14

Ineffectiveness claims are better suited for consideration at the post-conviction relief stage because they often require consideration of information beyond the scope of the record. See State v. Porter, 216 N.J. 343, 352-53 (2013). This is true here.

For example, on its face, defendant's argument questions his attorney's strategy in couching defendant's position as having acted in self-defense rather than in accord with the defense of necessity. We cannot know through resort to the existing record, however, why the attorney employed this strategy in order to determine whether counsel's performance fell below professional norms or caused defendant prejudice. Defendant, of course, may pursue this argument by way of a petition for post-conviction relief.

III

Defendant's final argument on appeal is that the aggregate fourteen-year sentence should be vacated and the matter remanded for resentencing because the judge failed to apply three mitigating factors. The judge, however, considered each of these three mitigating factors and detailed the reasons why they did not apply. In applying our deferential standard and in refraining from substituting our judgment for that of the sentencing judge, State v. Fuentes, 217 N.J. 57, 70 (2014), we reject defendant's arguments.

15

In his brief, defendant argues that mitigating factor three, N.J.S.A. 2C:44-1(b)(3), was "amply" supported by evidence that he acted under strong provocation, which included having his car surrounded while being physically and verbally assaulted. The judge found there was "no evidence that the actions by the victim or others necessitated the defendant utilizing his vehicle as a weapon to injure." Indeed, the guilty verdicts confirmed that the jury also found the lack of a reason for defendant to use his vehicle in self-defense. The judge's view of the evidence, in considering this mitigating factor, mirrored the jury's findings of fact.

The fourth mitigating factor, N.J.S.A. 2C:44-1(b)(4), authorizes a sentencing judge to consider whether substantial grounds exist which tend to excuse or justify a defendant's conduct even when not sufficient to establish a defense. The judge rejected this factor's application stating that although the evidence revealed "actions by the victim against the defendant," those actions could not excuse defendant's conduct. Again, this view of the evidence comported with the jury's rejection of defendant's assertion of self-defense.

Defendant lastly argues that the judge should have given him the benefit of the eighth mitigating factor, which applies when a "defendant's conduct was the result of circumstances unlikely to recur." N.J.S.A. 2C:44-1(b)(8). In

16

reaching the determination that this factor did not apply, the judge relied in part on defendant's criminal history which "consist[s] of prior assaults" in stating he was not convinced defendant would not again resort to similar actions if confronted again. In his brief, defendant argues that such a determination was made in error because the last of defendant's assault convictions was twenty years earlier and because the circumstances of this incident were particularly unusual.

Defendant's criminal history reveals that he had been convicted eighteen prior times in his forty-six years of life. Defendant violated probation twice and parole twice and was included in the Domestic Violence Central Registry. While the mechanics of these offenses were somewhat unusual, they ultimately arose from the not-so-unusual circumstance of the loss of temper or control. The judge was entitled to consider the mitigating factor by so viewing the offense and in consideration of defendant's considerable past criminal history.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-1886-19