**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2354-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

F.M.,

      Defendant-Appellant.

_____

Argued February 2, 2022 – Decided March 11, 2022

Before Judges Whipple, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 18-10-1084.

Gautam Rao, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Alison Perrone, First Assistant Deputy Public Defender, of counsel; Gautam Rao, on the briefs).

William P. Miller, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, of counsel and on the brief; John J. Scaliti, Legal Assistant, on the brief).

PER CURIAM

Defendant F.M. appeals from a judgment of conviction after the trial court denied his motion for a mistrial and sentenced him to consecutive sentences for two of the three contempt convictions. We affirm defendant's conviction but remand for resentencing.

In May 2017, defendant pleaded guilty to aggravated sexual abuse of a minor, A.G.,[1] the daughter of his former fiancée, D.F., with whom defendant has two young sons R.M. and G.M. Defendant was sentenced to a term in prison and subject to a Nicole's Law restraining order, N.J.S.A. 2C:14-12 and N.J.S.A. 2C:44-8, effective July 27, 2018, which prohibited him from contacting the victim, as well as D.F., R.M., and G.M. A few weeks later while incarcerated, defendant sent a letter addressed to the two sons but asking D.F. to let him "be in his sons' lives." Defendant also made phone calls.

On August 6, 2018, defendant called D.F. twice from a number she did not recognize. She did not answer the first call, but did pick up the second call, which was from that same number. Defendant hung up without speaking. D.F. could only hear breathing.

---

[1] Pursuant to Rule 1:38-3(c)(12), we use initials to ensure the victim's name in that criminal proceeding has been excluded.

A-2354-19

D.F. called the number back, and her call was connected to the Bergen County Sheriff's Department and routed to the front desk of the jail. She called the Bergen County Prosecutor's Office because of her concern that defendant was contacting her despite the restraining order and reported the calls to the Hackensack Police Department because she thought the restraining order was being violated.

Detective Ryan Weber researched the call and found it was made from the law library, which is why the call did not say it was from the Bergen County Sheriff's Department or that she was receiving a call from the jail. Weber secured a video and call logs because law library calls are not audio recorded and found evidence of defendant making calls from the law library. The jail produced handwritten and electronic call logs, a movement log, and surveillance video of the defendant.

Phones generally available to inmates record their calls. The jail clarified that law library calls are not recorded because they are supposed to be for legal calls but that inmates can request to use them for necessary personal calls because they cannot otherwise afford to make a regular call. Defendant said he went to the law library to "drop a package for my family to pick up some books.

3

And I wanted to make some phone calls to ensure that they pick up my package, also."

The letter arrived three days after the calls, on August 9, 2018, and was addressed to the six-year-old son. D.F. recognized defendant's handwriting. The letter's salutation and first paragraph address both sons, but the majority of the letter asked D.F. to allow contact with the sons. D.F. was upset by the letter and felt threatened because it indicated that defendant could still contact her despite the restraining order. She reported the letter to the police.

In October 2018, a Bergen County grand jury indicted defendant charging three counts of fourth-degree contempt for violating a restraining order, N.J.S.A. 2C:29-9a, one count of third-degree stalking, N.J.S.A. 2C:12-10c, and one count of third-degree stalking, N.J.S.A. 2C:12-10e.

Defendant moved to preclude the State from relying on the restraining order because it contained information referencing an underlying sexual offense and the imposition of restraints under Nicole's Law.[2] The court declined to bar

---

[2] Nicole's Law permits the court to issue an order as a condition of bail or to continue a prior order or issue a new order upon conviction, prohibiting a defendant charged with or convicted of a sex offense from having any contact with a victim, including restraining the defendant from entering a victim's residence, place of employment, business or school and from harassing or stalking the victim or victim's relatives. The law defines "sex offense" by referencing Megan's Law, N.J.S.A. 2C:7-2.

admission of the restraining order finding it admissible and highly relevant, and its relevancy significantly outweighed any prejudice to the defendant. However, the court and the parties agreed to redact references to the nature of defendant's convictions and Nicole's Law.

During trial, the court took additional steps to shield what was considered prejudicial. The judge asked, and the State affirmed, that D.F., the first witness "knows not to discuss anything about the underlying reason for the restraining order . . . ?" Before the State's second witness, the parties and court took time to consider, and put on the record, the effect of revealing that defendant was in a state prison, concluding it was acceptable that such revealed a prior sentence and degree of crime. Before the defense's case in chief, the parties convened with the judge to review previous convictions, at which point the State said, for a case in another county, "[n]ow, obviously, I have no intention of using the term 'Nicole's Law'. . . ." The court informed defendant that "the prosecutor is going to be permitted to disclose to the jury information about [his] prior criminal record, specifically that [he was] convicted in the past" for the jury to consider his credibility.

D.F. testified that the restraining order document prohibited defendant from contact with A.G. and her relatives and that D.F. saw the order specifically

listing herself, the two sons, and her father, before it was signed. She testified that the judge and prosecutor instructed that this applied to the victim and her family, but that no one in the courtroom specifically mentioned the sons by name when discussing the restraints.

Defendant testified that he did not know the restraining order applied to D.F. or his sons; he thought it only applied to the victim. Defendant asserted that he believed this based on his attorney's statement to him at his plea. Pursuant to pretrial motions, defense provided this audiotape of the plea proceeding, where counsel indicated that defendant could be involved "later down the road."

Without alleging that the document is forged or inaccurate, defendant testified that he did not see the additional names on the order when he signed it, and that he would not have signed it if he saw them because of his love for his sons. He testified that if he knew the order barred contact with the sons, he would have asked his lawyer to remove them but would not have sent a letter or made a call. Defendant testified he did not receive a copy of the order at sentencing or see the order after leaving court and that he could not really hear the judge talking about the restraining order. But later he admitted he heard the judge instruct no contact with the victim or family, but averred he did not

6

understand, because he relied on his attorney's advice and the absence of the other names on the order when he signed it. Defendant admitted writing the letter, and admitted making the phone calls to talk to D.F. and their children to tell them he missed them and loved them, but that he became emotional and hung up without speaking.

Despite the agreement to fully redact any references to sexual assault, two versions of the restraining order, only partially redacted and still containing references to Nicole's Law in small print, were admitted into evidence without objection. Near the bottom of the first page in the body of one order it states: "<u>ORDERED</u> pursuant to N.J.S.A. 2C:14-12 and N.J.S.A. 2C:44-8 ('Nicole's Law'), that you are prohibited from having any contact with the victim." (emphasis in original). On the second order, on the last line of the second page it states: "Form Promulgated by Supplement to Directive #01-10 (03/19/2018); CN: 11353 (Nicole's Law Restraining Order)."

The error was not noticed until deliberations, when the jury sent a note asking about the meaning of Nicole's Law. "The restraining order refers to Nicole's Law. Could we obtain an explanation of Nicole's Law?" Defendant moved for a mistrial, arguing although this was an inadvertent mistake, and both parties agreed there would be no references to aggravated sexual assault the jury

now had information indicating defendant was a sex offender. Defendant asserted that Nicole's Law is a well-known New Jersey law that allows victims of sex offenses to obtain such orders against their abusers.

The court denied finding a mistrial, stating:

> I heard the arguments of counsel. The very -- by virtue of the very question, I don't think they know what a Nicole's Law restraining order is. And they're being -- they're reading everything down there and -- but I don't think it rises to the level of a mistrial. It's certainly not evidence that we precluded. It's not as though something went down into the jury room that indicated that the defendant was convicted of a sexual offense. So the motion for a mistrial is denied.
>
> I think there is a way to instruct the jury to ignore the basis of the Nicole's Law restraining order.

The court issued the following instruction to the jury.

> I will remind you that you are to determine the defendant's guilt or innocence solely on the evidence that was presented in this courtroom at this trial. The basis of the restraining order is irrelevant in this trial. You must find in [c]ounts [one], [two], and [three] that a restraining order was entered and that the defendant knew of the existence of the restraining order and he purposely or knowingly disobeyed the order. I'll refer you to [p]age [six] of your instructions, "Speculation, conjecture, and other forms of guessing play no role in the performance of your duty."

The jury returned to deliberations and returned with a verdict convicting defendant of the three counts of contempt, with one count for each of the two

8

phone calls and one for the letter. The jury acquitted defendant on the two counts of stalking.

On November 22, 2019, the court sentenced defendant to three eighteen-month sentences, two to run concurrently and the third to run consecutively. Defense offered mitigating factors in its report and oral argument.

The court considered the sentencing materials, counts, convictions, and record in this matter, prior convictions and conduct, and substance use and psychological history. The court considered aggravating and mitigating factors: for aggravating factor three, a very high risk of re-offense given the lack of remorse, desire to communicate with his children, and lack of insight into his conduct with the sexual offenses; aggravating factor six for prior convictions; and aggravating factor nine for general and specific deterrence in not violating court orders. The court did not accept lack of threatened or caused serious harm under mitigating factor one, finding in part that "[h]is contact with [D.F.] in his attempt to contact the children through her was a clear message, I can get to you . . . it makes a victim unnerved, it's anxiety producing and it undermines the very faith in what they believe that the [c]ourt can protect them." The court also found that mitigating factor two did not apply because defendant contemplated and knew the harm; did not accept mitigating factor eight because the court

found a risk of reoccurrence given defendant's lack of insight; and that sex offender counseling would not decrease risk of committing again under factor nine and had not given his purported contact with his sister; thus, the aggravating factors substantially outweighed the mitigating factors. The court entered the judgment of conviction with an aggregate sentence of thirty-six months, to run consecutively to the sentence he was already serving.

This appeal followed. Defendant raises the following issues on appeal:

POINT I

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING A MISTRIAL WHERE EVIDENCE OF [F.M.]'S PRIOR SEXUAL OFFENSE WAS PROVIDED TO THE JURY DURING HIS TRIAL FOR VIOLATING A RESTRAINING ORDER.

POINT II

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT IMPOSED TWO CONSECUTIVE SENTENCES FOR A SINGLE, DISCRETE COURSE OF CONDUCT.

A. [F.M.]'s Crimes and Objectives Were Not Predominantly Independent of Each Other.

B. [F.M.]'s Crimes Did Not Involve Any Acts of Violence or Threats of Violence, Let Alone Separate Ones.

C. [F.M.]'s Actions Were Part of a Single Period of Aberrant Behavior.

D. [F.M.]'s Actions Did Not Involve Multiple Victims.

E. The Convictions for Which the Sentence Is to Be Imposed Are Not Numerous.

F. The Court Failed to Consider the Overall Fairness of the Sentence It Imposed.

"A mistrial is an extraordinary remedy" that should be employed "[o]nly when there has been an obvious failure of justice. . . ." State v. Mance, 300 N.J. Super. 37, 57 (App. Div. 1997). The decision to grant a mistrial "to prevent an obvious failure of justice" always remains within the sound discretion of the trial judge. State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Harvey, 151 N.J. 117, 205 (1997)). We do not disturb a trial judge's ruling on a motion for a mistrial unless it presents an abuse of discretion resulting in a "manifest injustice." State v. DiRienzo, 53 N.J. 360, 383 (1969).

When inadmissible evidence is inadvertently admitted in evidence at trial, the decision to give a curative instruction or grant the "more severe response of a mistrial" is "peculiarly within the competence of the trial judge, who has the feel of the case and is best equipped to gauge the effect of a prejudicial comment

11

on the jury in the overall setting." State v. Winter, 96 N.J. 640, 646-47 (1984). "Even in the context of a constitutional error, a curative instruction will not be deemed inadequate unless there is a real possibility that the error led the jury to a result it otherwise might not have reached." State v. Scherzer, 301 N.J. Super. 363, 441, (App. Div. 1997).

Absent a manifest injustice, we will not disturb the trial court's decision, particularly where, as here, a curative instruction is an appropriate remedy, State v. Jackson, 211 N.J. 394, 409-10 (2012), and is "firm, clear, and accomplished without delay," State v. Vallejo, 198 N.J. 122, 134 (2009).

In State v. Herbert, 457 N.J Super. 490, 503 (App. Div. 2019), we provided the following factors to consider when determining the adequacy of a limiting instruction: (1) "the nature of the inadmissible evidence the jury heard, and its prejudicial effect"; (2) "an instruction's timing and substance affect its likelihood of success"; and (3) a court's "tolerance for the risk of imperfect compliance." Id. at 505-08.

Prong one weighs in favor of finding the trial court adequately instructed the jury. There were no references to Nicole's Law and the nature of defendant's sexual assault conviction during the trial. What the jury did know was that defendant had been convicted of a first-degree offense and was under the

compulsion of, and the victim and her family were under the protection of, a final restraining order. That necessary information was prejudicial in and of itself. One does not become subject to a final restraining order without there having been a finding that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred. Moreover, the jury did not know what the reference to Nicole's Law meant and the instruction given by the judge told them the basis of the restraining order was irrelevant.

As for prong two, instructions were sufficiently timely and substantively adequate. As for prong three, the risk of jury non-compliance was minimal. It is presumed the jurors followed these instructions. State v. Loftin, 146 N.J. 295, 390 (1996) (citing State v. Manley, 54 N.J. 259, 271 (1969)); Herbert, 457 N.J. Super. at 503. "The presumption is '[o]ne of the foundations of our jury system.'" Herbert, 457 N.J. Super. at 504 (quoting State v. Burns, 192 N.J. 312, 335 (2007)).

For these reasons, we conclude the unexplained references to Nicole's Law were not unduly prejudicial, were adequately addressed by limiting instructions, and did not result in a manifest denial of justice that deprived defendant of a fair trial.

13                                                                 A-2354-19

As to defendant's sentencing argument, we apply a deferential standard of review. State v. Fuentes, 217 N.J. 57, 70 (2014). We affirm the sentence unless (1) the judge violated the sentencing guidelines; (2) the judge's findings of aggravating and mitigating factors were not based on competent and credible evidence in the record; or (3) "the [judge's] application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." Ibid. (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

N.J.S.A. 2C:44-5(a) provides that "multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence . . . ." Although there are no statutory rules for imposing consecutive sentences, the Court set forth guidelines in State v. Yarbough, 100 N.J. 627 (1985).

Regardless of how it applies Yarbough guidelines and factors, the court must expressly and separately state its reasons for imposing consecutive sentences, so an appellate court may review sentencing for valid use of discretion. See State v. Miller (Miller II), 205 N.J. 109, 129 (2011); State v. Miller (Miller I), 108 N.J. 112, 122 (1987). If, however, "the facts and circumstances leave little doubt as to the propriety of the sentence imposed," an appellate court may affirm a consecutive sentence even if the judge had "not

carefully articulate[d]" reasons.  See State v. Jang, 359 N.J. Super. 85, 97-98 (App. Div. 2003).  In a proper Yarbough sentencing assessment, the court shall also provide "[a]n explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings. . . ."  State v. Torres, 246 N.J. 246, 268 (2021).  While "mere identification of Yarbough factors" is insufficient to complete the analysis, ibid. at 270, it is still necessary.  Generally, a reviewing court will remand for resentencing when the trial court has not provided adequate reasoning for its sentence.  State v. Kromphold, 162 N.J. 345, 355 (2000).

Under State v. Melvin, 248 N.J. 321 (2021), a sentencing court cannot use acquitted conduct to enhance a sentence, and since the judge only heard D.F.'s testimony as to her reasonable fear during sentencing and not during the trial where defendant was acquitted of stalking charges, its determination was improper.

Defendant's other arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  We remand for resentencing with instructions to comply with the principles set forth in Melvin, Torres and Yarbrough.

Affirmed in part, remanded for re-sentencing.   We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2354-19